Frank A. G-ulotta, J.
This action, originally brought for an injunction to prevent the defendant, Schultz, from interfering with the plaintiffs’ water supply, which formerly reached plaintiffs’ property through an underground pipe running across Schultz’s property from a public street, until the pipe was deliberately severed by Schultz, has now by stipulation between the parties become an action for money damages only.
Plaintiffs now get their water from another source, and they seek to recover the cost of laying a pipe to the new supply.
In speaking of defendant the court will be understood to refer to Schultz, since the other named defendants are simply owners of other lots and have nothing to do with the controversy.
The facts are that in 1951 one William A. Birch acquired title to a large tract of land in Westbury, containing a manor house, a barn and some other buildings, which he proceeded to subdivide into smaller parcels and sell to various purchasers. We are concerned with Lot 240 which eventually came to be owned by Schultz and Lot 143 which was conveyed directly from Birch to the plaintiffs in 1958.
The last common owner of the whole tract was Birch and the conveyance out of him of Lot 240 took place in 1951, when it was included in a deed to Westcamp Building Corporation of 9 lots, initiating a chain of title which, as to this lot, reached Schultz in 1955. ■
The manor house is situated on Lot 143, and Birch continued to reside in it until he sold to the plaintiffs. His water supply came from an underground pipe traversing Lot 240 and the plaintiffs continued to use the same supply until March, 1959, when Schultz, after having warned them to get another supply, broke the old pipe.
*802 It should be noted that before he sold off the first parcels in 1951, Birch had created a roadway or right of way running north from Wheatly Road, a public street, some 85 feet wide at its widest point and 947 feet long where it reached Lot 143, the most distant parcel from the street.
Later, in September, 1955, the then owners of all the affected parcels entered into an agreement for a water easement in the bed of the said private road, which brought a 6-inch water main into said road for a distance of 533 feet where it was available for Lot 143 as well as for the other lots in the development to hook up to.
The deed out of Birch to Lot 240 was silent with respect to a reservation of any right to continue to burden said lot with an easement in favor of Lot 143. Each subsequent deed, including the eventual deed into Schultz, was likewise silent on this score.
Nevertheless it is the plaintiff’s position that, under the circumstances of this case, such an easement was necessary for the continued use of Lot 143, and that an easement by reservation is implied by law in favor of that plot.
In reaching a decision in this case, it is necessary to keep in mind that we are dealing here with an implied easement by reservation, and not with an implied easement by grant. The distinction is important since there are limitations on the former which do not apply to the latter, since a grantor will not be heard to detract from his grant by claiming a reservation in his own favor, where he sells off the servient estate, whereas there is no such reluctance to imply a grant against him where he sells off the dominant estate.
After some uncertainty as to what distinction the New York law made in this respect, the Court of Appeals settled the matter in Wells v. Garbutt (132 N. Y. 430) when it stated at pages 435-436:
“ So much has been written upon the general subject of implied reservation that a review of the authorities is no longer practicable in an opinion of reasonable length and we shall content ourselves by announcing the rule applicable to the facts of this case and citing a few out of the many authorities upon which it is based.
1‘ Where the owner of two parcels of land conveys one by an absolute and unqualified deed, we think that an easement will be implied in favor of the land retained by the grantor and against the land conveyed to his grantee, only in case the burden is apparent, continuous and strictly necessary for the enjoyment of the former.” (Citing many eases.)
*803 Since this rule requires that such an easement be apparent, the fact that this was a buried pipe, at first blush, would seem to preclude any possibility of the rule’s application. However, the proof shows that Schultz in fact knew of the pipe’s existence since it is mentioned in his purchase contract, and while that alone would not have been enough to charge Schultz if anyone prior to him in his chain of title had taken title without knowledge, the proof also shows that each prior owner was directly connected with the developer and also knew of the pipe.
I think actual knowledge in this instance is a substitute for the nonapparency of the servitude, as was intimated in Treadwell v. Inslee (120 N. Y. 458) when the court said at page 465, in dealing with an implied easement by reservation: “As already stated, the drain was not an apparent or visible encumbrance, and, in the absence of actual knowledge of its existence, Davidson had a right to rely upon appearances and to believe that the apparent condition was the real one.” So if the concealed nature of the easement were all that was involved, the defense would fail even though this is a reserved easement we are dealing with.
However, there is no substitute for the “necessitous” requirement of such an easement, and the facts show that this easement was never a strict necessity, since Birch had access to the public street and its water main from the moment he broke up the tract and conveyed out the first parcel. Furthermore, after the new water main was put in, it was nothing more than a convenience to him to continue to get water from the old pipe, and thus save incurring expense to connect with the new one.
The recent case of Gerbig v. Zumpano (7 N Y 2d 327) holds nothing to the contrary, since that case dealt with an implied easement by grant. As the opinion points out, when lots are sold with reference to a filed map showing a private street, and having no other access to the public street, as they were in that case, the law is well settled that the grantee receives an easement in the mapped street. See Lord v. Atkins (138 N. Y. 184) where it is stated at page 191: 1 ‘ When, in such a case, a lot is sold bounded by a street, the purchaser and his grantees have an casement in the street for the purposes of access, which is a property right. ’ ’"
In other words, when we are dealing with an easement by grant, the fact that it may have also qualified as an easement of necessity, does not detract from its permanency as a property right, which survives the termination of the necessity.
*804 On the other hand, in dealing with an easement by reservation, since the same can only come into being from necessity, perforce it comes to an end when the necessity vanishes. (Root v. Conkling, 199 App. Div. 90.)
Even learned writers on the subject'have been led astray. See Walsh, Law of Property (2d ed., p. 610) where he concludes that there can be no easement by grant in a hidden drain from an outhouse, citing Butterworth v. Crawford (46 N. Y. 349) which is a case dealing not with an implied grant, but with an implied reservation. That the Court of Appeals intended to promulgate no such rule is borne out by the later case (Goldstein v. Hunter, 257 N. Y. 401) where the same court found no difficulty in finding an implied easement by grant in a hidden sewer drain, in favor of the dominant parcel which had been conveyed out first by the common owner, although the case goes on to hold that subsequent purchasers of the servient estate are not similarly bound, because of the effect of the recording statute (Real Property Law, § 291).
Judgment is granted in favor of defendant, dismissing complaint on the merits, with costs.
The relief sought by way of counterclaim is granted to the extent of declaring the rights of the defendant, Schultz, in the premises as to the plaintiffs and as to anyone claiming under them, and is otherwise denied.
This decision contains the findings which this court deems essential as required by section 440 of the Civil Practice Act. Settle judgment.