Robert G. SIEBER and Delrose Sieber,
Plaintiffs in Error,

v.

Phil E. WHITE, Defendant in Error.

No. 39150.

Supreme Court of Oklahoma.

Sept. 26, 1961.

Rehearing Denied Nov. 28, 1961.

Application for Leave to File Second Petition
for Rehearing Denied Dec. 12, 1961.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for plaintiffs in error.

Paul Pugh, Oklahoma City, for defendant in error.

BLACKBIRD, Vice Chief Justice.

This case is a sequel to Johnson v. Whelan, 171 Okl. 243, 42 P.2d 882, 98 A.L.R. 1096. It involves a controversy between the successors in title to the adjoining Oklahoma City property owners who were the litigants there. The controversy concerns a claimed right, which might be termed "auxiliary", or "appurtenant", to the use of the party driveway between the two then-existing residences, for which said driveway, or right of way, an easement was there held to have been acquired by prescription.

Defendant in error, White, a physician, inherited what might be termed the "east" property (located at 318 Northwest 13th Street) from his mother, Mrs. Luella K. Johnson, about the beginning of the last decade. In 1950, he replaced the old residence standing there with a newly constructed office building, in part of which he maintains his office, while renting the remainder of the building to two insurance companies for their offices.

In constructing the building, White left enough space on the back, or south, end of the lot so that he and his tenants, and those coming to their offices therein, could park 12 automobiles there, after arriving at said parking space by way of the party driveway, located partly on his lot and partly on the residential property adjoining it on the west, at 320 Northwest 13th Street.

The latter property then remained the residence of one of the plaintiffs in error, Mrs. Whelan, now Whitt, and we will sometimes refer to it as the "Whelan" property. In 1954, she sold the property to the other plaintiff in error, her father, Robert G. Sieber, who, in the fall of 1954, moved away the residence standing there and converted the lot into part of an asphalt-covered parking area for the Sieber Hotel.

Thereafter, in September, 1957, Sieber constructed an iron railing fence, with steel posts embedded in the ground, along the western edge of what had been the driveway between the two residences, and extending to the point, where said party driveway had ended and the concrete apron, or approach, to Mrs. Whelan's garage had begun. From that point, the fence extended east to the border line between the two lots and from thence south on said line to the southern boundary of the Whelan or Sieber lot. Later, the fence was removed between the point which had marked the end of the joint driveway and the place where the Whelan garage had stood.

In the situation thus created, the usefulness of the parking space behind White's building for parking as many as twelve automobiles was virtually destroyed, because, due to the narrowness of the passageway between said building and the newly constructed fence, there was not room enough to park more than five or six cars there, and permit maneuvering them into a position to drive away from the property by traversing the route of the former driveway into Thirteenth Street. Before the above described fence was erected, this could be, and had been, done by turning such autos over onto that part of the Whelan lot, where the concrete approach to its garage had stood.

Seeking a remedy for this situation, White, as plaintiff, instituted the present action against Sieber and his daughter, as defendants, alleging, in material substance (in addition to the facts already herein stated or alluded to, and others), that, in connection with the easement he and his predecessor in title had acquired, for the driveway over that part of defendants' lot extending to the point where the concrete apron in front of its garage had formerly stood, they had also acquired, by reason of the long, uninterrupted and adverse assertion, and use, or exercise of it, the prescrip-

tive right to use the wider space immediately in front of where the Whelan garage had stood. Plaintiff further alleged that the aforedescribed fence, together with the parking of cars blocking off the aforedescribed gap in the fence, by automobiles that defendants, or their parking lot attendant, parked immediately west of it, prevented him, his agents, invitees and licensees from driving through that space and traversing his prescriptive easement over that part of defendants' lot formerly occupied by the joint driveway.

In his petition, plaintiff prayed for damages in the sum of $10 per day, from September 4, 1957, on account of defendants' "wrongful obstruction" of, and prevention of the use of, his said claimed easement. Plaintiff further prayed for recovery of his costs, and that his claimed easement be adjudged a "permanent servitude" on defendants' lot, for the benefit of his lot, for both vehicular and foot travel"; that defendants be decreed to have "no right, title or interest in said driveway;" and that they, and their successors, be perpetually enjoined from obstructing or interfering in any manner " * * * with the use of said driveway and easement * * *".

In their answer, defendants admitted that title to their lot was subject to the aforedescribed joint driveway easement extending along its eastern border over that portion of their lot covered by the former driveway, but they, in effect, denied that plaintiff's claimed easement extended any farther south than the southern end of said driveway, or included any part of the space south of there that had formerly been occupied by the concrete apron Mrs. Whelan had constructed solely at her own expense, to form an approach to her garage from the driveway (which is the same space whose use plaintiff claims by prescription, and is frequently referred to as part of a "turnaround"). Defendants denied that there had ever been any "permissive use" of this space by plaintiff and/or his predecessor in title.

At the trial before the court without a jury, plaintiff testified that his mother, Mrs.

Johnson, had purchased his property in 1920; that Mrs. Whelan then owned the adjoining property; that there was then no way of driving into the separate garages on the back, or south, ends of these two lots, except over the joint driveway between the two large residences standing on them. This witness described the concrete aprons then existing in front of these garages as a "turn-around", extending a distance of "about 16 to 18 feet" east, and "approximately 24 or 25 feet" west of the border-line between the two lots; that through the years he had made repairs to that part of said turn-around on defendants' lot; that there was no controversy with reference to the driveway until " * * * around 1926, '27, or '28 * * *" when Mrs. Whelan began making oral protests against the use of the part of the turn-around on her lot, by him and his mother and others, for backing their cars so that they could be headed north into 13th Street in leaving the Johnson-White property. Plaintiff further testified that despite Mrs. Whelan's protests, this use continued, and that "occasionally" Mrs. Whelan used the concrete apron in front of his mother's garage for turning her car around in the same manner. Plaintiff further testified that the use of the concrete apron in front of the Whelan garage started as early as 1920. His position that such past use was continuous, and contrary to Mrs. Whelan's expressed wishes, was supported by the testimony of a Mr. Brock, who testified that "around '34 or '35", when he was a superintendent for Standard Roofing and Material Company, and sent said company's trucks to the property now owned by plaintiff, they would have to use the Whelan garage apron for turning around and leaving the premises, after unloading materials there. He further testified that Mrs. Whelan didn't like this, and that she came out of her house and " * * * threatened to run us off several times," but that, despite this, the trucks continued to use the apron; that this also occurred just before and during the time that plaintiff's office building was being constructed. Testimony of similar import was given by other wit-

nesses who had had occasion to visit and/or drive automobiles on the same premises over the period of the past 15 years, or more.

After both plaintiff and defendants had introduced their evidence and rested, the trial judge personally visited the scene of the contested easement, and, after viewing the situation there, rendered judgment in favor of plaintiff, after finding that he and his predecessors in title " * * * have been in visible, open, adverse, notorious and continuous use of said driveway and the turn-around, located at the south end thereof, for more than fifteen (15) years prior to the filing of this action * * *". The court further found that plaintiff had thus acquired an easement over the driveway and turn-around; and that, by building the aforedescribed iron railing fence, defendants abandoned their easement on plaintiff's property.

In the decretal part of the judgment, the court declared the easement to be a subsisting one for the purposes of entering and leaving plaintiff's property, or the parking space south of his building; and restrained and enjoined defendants from erecting and maintaining "any fence, wall, post or other barrier, or in any other manner closing, obstructing or preventing the full use of said driveway and turn-around * * *".

After the overruling of their motion for a new trial, defendants perfected the present appeal.

■ In the first proposition defendants urge for reversal, they maintain that the evidence was insufficient to sustain the trial court's judgment. In support of their assertion that plaintiff failed to prove the elements of a prescriptive easement in the portion of their lot extending from, what had been the southern end of the joint driveway, to the former site of Mrs. Whelan's garage, defendants' brief says:

"There is no testimony whatever that can fairly be said to indicate that anyone ever asserted an adverse use over the parking apron. There is no testimony to indicate that anyone ever claimed the right to use the parking apron. There is no testimony to indicate that knowledge was ever brought to the attention of Mrs. Whelan or defendants that the sporadic use of the apron was claimed as a matter of right. The most that can be said from the evidence is that various people made a limited use of the property and Mrs. Whelan constantly objected to such use and ran them off her property. At no time did anyone say 'Mrs. Whelan, I claim a right to use your apron to turn around.' Instead they silently complied with her requests whenever she told them to get off. At most the witnesses were naked trespassers who repeatedly sneaked back on the property to use it until Mrs. Whelan ran them off again. Certainly the law will not allow such a silent assertion of an adverse claim of user to ripen into an easement when the opportunity to assert a right to use was constantly available."

The above argument reflects an incorrect appraisal of the evidence in this case, and is inconsistent with the demonstration in Johnson v. Whelan, supra, that continued use may, under proper circumstances, be *the equivalent of asserting* an adverse right, and render unnecessary or superfluous the verbal assertion of such right. The undisputed evidence that Mrs. Whelan verbally objected, time after time, over a period of more than fifteen years, to such use of the concrete apron in front of her garage was unquestionable proof that she knew (without being confronted with any formal or verbal claim of it) that such right was being repeatedly asserted. That application of the presumption arising from user is not confined to "mutually constructed" driveways, or to easements over "uninclosed land" is clearly demonstrated by the authorities. See pages 344ff of the Annotation at 27 A.L.R.2d 322, and compare with the rule under which Johnson v. Whelan, supra, is discussed at page 346 of said annotation. See also Barnes v. Haynes, 13 Gray 188, 79 Mass. 188, 74 Am.Dec. 629, and other cases

discussed in the Annotation at 98 A.L.R. 1098, 1100–1103.

By quoting excerpts from 28 C.J.S. Easements § 18, page 672, and certain cases, showing the difference between the evidence required to establish adverse user in instances of claimed easements over so-called "inclosed" land, and those involving claimed easements over "uninclosed" land, defendants infer that the evidence in this case is insufficient under the principles governing either—that it is insufficient under the "inclosed" land rule, because it shows Mrs. Whelan objected to plaintiff and his mother, and/or their agents and invitees, using her garage apron in leaving 318 Northwest 13th Street; and it is insufficient under the "uninclosed" land rule, because—under it—mere user is deemed permissive, and raises no presumption that it is done under claim of right.

■ The conduct of Mrs. Whelan established by the evidence of this case is no obstacle to the application of the legal fiction, in prescriptive easement cases, that the uninterrupted use of a right of way over the servient estate, by the owner of the dominant estate, presumes a grant from the latter's owner. In this connection, see 28 C.J. S., quoted in Cookson v. Duke, 206 Okl. 336, 243 P.2d 706, 709. This is for the reason that her verbal objections to the subject use of her garage apron did not cause, or constitute, an interruption of such use. In this connection, notice Thompson On Real Property, Vol. 2, section 519, Notes 78 and 79. Proof of her protests and remonstrances merely aided plaintiff in showing that the user he relied on was adverse, rather than permissive. In Vol. 1, on page 729 of the cited Work, the author quotes from Lehigh Valley R. Co. v. McFarlan, 43 N.J.L. 605, as follows:

"Protests and remonstrances by the owner of the servient tenement against the use of the easement, rather add to the strength of the claim of a prescriptive right; for a holding in defiance of such expostulations is demonstrative proof that the enjoyment is under a claim of right, hostile and adverse; and if they be not accompanied by acts amounting to a disturbance of the right in a legal sense, they are not interruptions or obstructions of the enjoyment."

In view of the undisputed protestations of Mrs. Whelan, during the prescriptive period, indicating that the use of her garage apron was not "permissive" but, on the other hand, was adverse, there is no merit to defendants' proposition that: "Plaintiff's evidence is insufficient to rebut the presumption of permissive user."

■ Under their Proposition II, defendants assert error in that part of the trial court's judgment determining, in substance, that they had abandoned any rights they may, at one time, have had in connection with the driveway easement. They argue that, upon application of Tit. 60, O.S. 1951 § 59, to the evidence in this case, any decision as to this matter must necessarily have been based upon the third way prescribed in said statute for the extinguishment of a servitude, to-wit:

"By the performance of any act upon either tenement, by the owner of the servitude, or with his assent which is incompatible with its nature or exercise * * *."

Defendants' argument is continued by asserting that the only "act" they were proved to have performed, in any way indicative of an intention to abandon their reciprocal rights in the easement, was the erection of the "bumper high" iron railing fence, that was left without an opening to the party driveway for approximately three weeks, before it was changed and an opening made in it west of the parking space behind plaintiff's building. Defendants say they have been unable to find an Oklahoma case wherein the erection of a fence has been held to amount to an abandonment, but they cite cases from other jurisdictions in an attempt to demonstrate that their erection of the fence itself was an insufficient basis for the trial court's determination on this phase of the case. They tacitly concede that

such a party's intention, either to abandon or not to abandon, is the controlling factor in such a decision; and we think it must be recognized (under the authorities cited by plaintiff) that other facts of an individual case may be taken into consideration, besides a particular act of claimed abandonment in arriving at its proper conclusion. As pointed out by plaintiff's counsel, defendants have combined this lot at 320 Northwest 13th Street with one south of it possessing ways of ingress and egress to and from one or more other streets, to form one large parking area; with entrances and exits both north and south; and it is not claimed that they now have any further use or need for any sort of easement on plaintiff's lot. Considering the facts and circumstances as a whole, we cannot hold that the trial court's judgment with reference to defendants' abandonment of the easement is clearly against the weight of the evidence. In view of this conclusion, and the lack of merit in defendants' other arguments, the judgment of that court is hereby affirmed.

WILLIAMS, C. J., and WELCH, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.