600 P.2d 278

**ABO PETROLEUM CORPORATION et al., Plaintiffs-Appellees,**

v.

**James W. AMSTUTZ et al., Defendants-Appellants.**

**No. 12184.**

Supreme Court of New Mexico.

Sept. 10, 1979.

Rehearing Denied Sept. 25, 1979.

Montgomery, Andrews & Hannahs, Walter J. Melendres, Seth D. Montgomery, Santa Fe, for defendants-appellants.

Losee, Carson & Dickerson, Chad D. Dickerson, Artesia, for plaintiffs-appellees.

OPINION

PAYNE, Justice.

This action was brought in the District Court of Eddy County by Abo Petroleum and others against the children of Beulah Turknett Jones and Ruby Turknett Jones to quiet title to certain property in Eddy County. Both sides moved for summary judgment. The district court granted Abo's motion, denied the children's motion, and entered a partial final judgment in favor of Abo. The children appealed, and we reverse the district court.

James and Amanda Turknett, the parents of Beulah and Ruby, owned in fee simple the disputed property in this case. In February 1908, by separate instruments entitled "conditional deeds," the parents conveyed life estates in two separate parcels, one each to Beulah and Ruby. Each deed provided that the property would remain the daughter's

> during her natural life, . . . and at her death to revert, vest in, and become the property absolute of her heir or heirs, meaning her children if she have any at her death, but if she die without an heir or heirs, then and in that event this said property and real estate shall vest in and become the property of the estate of . . . [her], to be distributed as provided by law at the time of her death. . . .

At the time of the delivery of the deed, neither daughter was married, nor were any children born to either daughter for several years thereafter.

In 1911, the parents gave another deed to Beulah, which covered the same land conveyed in 1908. This deed purported to convey "absolute title to the grantee . . . ." In 1916, the parents executed yet another deed to Beulah, granting a portion of the property included in her two previous deeds. A second deed was also executed to Ruby, which provided that it was a "correction deed" for the 1908 deed.

After all the deeds from the parents had been executed, Beulah had three children and Ruby had four children. These children are the appellants herein.

Subsequent to the execution of these deeds, Beulah and Ruby attempted to convey fee simple interests in the property to the predecessors of Abo. The children of Beulah and Ruby contend that the 1908 deeds gave their parents life estates in the property, and that Beulah and Ruby could only have conveyed life estates to the predecessors in interest of Abo. Abo argues that the 1911 and 1916 deeds vested Beulah and Ruby with fee simple title, and that such title was conveyed to Abo's predecessors in interest, thereby giving Abo fee simple title to the property.

■ We begin our inquiry by examining the nature of the estates James and Amanda Turknett conveyed in the 1908 deeds.

First, the deeds gave each of the daughters property "during her natural life." As Abo apparently concedes, these words conveyed only a life estate.

Second, each deed provided that upon the daughter's death, the property would pass to her "heir or heirs," which was specifically defined as "her children if she have any at her death." Because it was impossible at the time of the original conveyance to determine whether the daughters would have children, or whether any of their children would survive them, the deeds created contingent remainders in the daughters' children, which could not vest until the death of the daughter holding the life estate. C. Moynihan, *Introduction to the Law of Real Property* 123 (1962).

Third, each deed provided that if the contingent remainder failed, the property would become part of the daughter's estate, and pass "as provided by law at the time of her death." The effect of this language would be to pass the property to the heirs of the daughter upon the failure of the first contingent remainder. Because one's heirs are not ascertainable until death, (C. Moynihan, *supra* at 127), the grant over to the daughter's estate created a second, or alternative, contingent remainder.

The only issues that remain are whether the parents retained any interest, whether by their subsequent deeds to their daughters they conveyed any interest that remained, and whether those conveyances destroyed the contingent remainders in the children.

The grantor-parents divested themselves of the life estate and contingent remainder interests in the property upon delivery of the first deed. Because both remainders are contingent, however, the parents retained a reversionary interest in the property. C. Moynihan, *supra* at 124, n. 1.

Abo's position is that by the subsequent conveyances to the daughters, the parents' reversionary interest merged with the daughters' life estates, thus destroying the contingent remainders in the daughters' children and giving the daughters fee simple title to the property. This contention presents a question which this Court has not previously addressed—whether the doctrine of the destructibility of contingent remainders is applicable in New Mexico.

This doctrine, which originated in England in the Sixteenth Century, was based upon the feudal concept that seisin of land could never be in abeyance. From that principle, the rule developed that if the prior estate terminated before the occurrence of the contingency, the contingent remainder was destroyed for lack of a supporting freehold estate. The one instance in which this could happen occurred when the supporting life estate merged with the reversionary interest.

Although New Mexico has adopted the common law of England by statute, § 38–1–3, N.M.S.A.1978, it has been repeatedly held that "if the common law is not 'applicable to our condition and circumstances' it is not to be given effect." *Flores v. Flores*, 84 N.M. 601, 603, 506 P.2d 345, 347 (Ct.App. 1973), *cert. denied*, 84 N.M. 592, 506 P.2d 336 (1973). *See also Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975). In *Hicks* this Court held that sovereign immunity—another doctrine of the common law—could be "put to rest by the judiciary" once it had reached a point of obsolescence. *Id.* at 590, 544 P.2d at 1155.

The doctrine of destructibility of contingent remainders has been almost universally regarded to be obsolete by legislatures, courts and legal writers. *See, e. g., Whitten v. Whitten*, 203 Okl. 196, 219 P.2d 228 (1950); 1 L. Simes and A. Smith, *Law of Future Interests* § 209 (2d ed. 1956). It has been renounced by virtually all jurisdictions in the United States, either by statute or judicial decision, and was abandoned in the country of its origin over a century ago. Section 240 of the *Restatement of Property* (1936) takes the position that the doctrine is based in history, not reason. Comment (d) to § 240 states that "complexity, confusion, unpredictability and frustration of manifested intent" are the demonstrated consequences of adherence to the doctrine of destructibility. Furthermore, because operation of the doctrine can be avoided by the use of a trust to support the contingent remainder, the doctrine places a premium on the drafting skills of the lawyer. 49 Mich.L.Rev. 762, 764 (1951).

The only tenable argument in support of the doctrine is that it promotes the alienability of land. It does so, however, only arbitrarily, and oftentimes by defeating the intent of the grantor. Land often carries burdens with it, but courts do not arbitrarily cut off those burdens merely in order to make land more alienable.

■ Because the doctrine of destructibility of contingent remainders is but a relic of the feudal past, which has no justification or support in modern society, we decline to apply it in New Mexico. As Justice Holmes put it:

> It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

Holmes, *The Path of the Law*, 10 Harv.L. Rev. 457 at 469 (1897).

We hold that the conveyances of the property to the daughters did not destroy the contingent remainders in the daughters' children. The daughters acquired no more interest in the property by virtue of the later deeds than they had been granted in the original deeds. Any conveyance by them could transfer only the interest they had originally acquired, even if it purported to convey a fee simple. *Cook v. Daniels*, 306 S.W.2d 573 (Mo.1957).

The summary judgment and partial final judgment entered in favor of Abo are reversed, and the cause is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C. J., and FELTER, J., concur.