1997-NMCA-052

941 P.2d 978

**A.H. MANOUCHEHRI, M.D.,**
**Plaintiff–Appellee,**

v.

**Jeff HEIM, Defendant–Appellant.**

**No. 17527.**

Court of Appeals of New Mexico.

May 29, 1997.

Mark A. Filosa, Filosa & Filosa, Truth or Consequences, for Plaintiff–Appellee.

Louis J. Vener, Louis J. Vener, P.C., Albuquerque, for Defendant–Appellant.

## OPINION

HARTZ, Chief Judge.

(1) Jeff Heim sold Dr. A.H. Manouchehri a used x-ray machine. Manouchehri sued for breach of warranty and was awarded $4400 in damages after a bench trial. Heim appeals, claiming the following errors: (1) venue was improper; (2) direct damages based on the cost of repair should not have been awarded because there was no evidence of such cost; and (3) consequential damages should not have been awarded because (a) Manouchehri could have avoided them by obtaining a replacement machine; (b) they were not foreseeable, and (c) they were not proved with the required certainty. We affirm.

## I. BACKGROUND

(2) Manouchehri was the sole witness at trial. Heim presented no evidence other than through cross-examination of Manouchehri. We summarize Manouchehri's testimony.

(3) Manouchehri is a physician in Cedar Crest, New Mexico. Heim, a sales representative of a medical supply company, had previously sold various items to Manouchehri. In December 1991 Heim learned that Manouchehri wanted to buy a used 100/100 x-ray machine. The two numbers refer to the rating of the machine in kilovolts and milliamps, respectively. The rating of the machine affects the quality of the image obtained. A weak machine often will not be able to produce adequate images.

(4) On December 9 Manouchehri purchased a machine from Heim. He paid with a check for $1900 on which he wrote at the top "guaranteed to work (install Continental 100–100 x-ray) without limitation" and wrote on the memo line "purchase and installation of Continental 100–100 x-ray." Heim signed his name on the front of the check after Manouchehri read the notations to him.

(5) During the following weeks Manouchehri realized that the machine was performing as a 100/60 machine. The power

was sufficient only for x-rays of small children and thin people. Manouchehri notified Heim and asked him to repair it, offering to pay half the repair costs. Although Heim sent someone to inspect the machine, no repairs were made. Manouchehri continued to talk regularly with Heim about the problem until the lawsuit was filed in September 1994. Heim at first denied knowing that the x-ray machine was a 100/60 machine but later admitted that he knew. At that time he indicated that it was the sort of machine one can buy for only $1900.

(6) Manouchehri initially obtained a default judgment, but it was later set aside. After trial on April 4, 1996 Manouchehri obtained judgment in the amount of $4400. Of the total, $1900 was for direct contract damages and $2500 was for consequential damages. The district court denied Heim's motion for reconsideration and Heim appealed.

## II. VENUE

■ (7) Heim contends that the venue for trial should have been Bernalillo County rather than Sierra County. He failed, however, to raise the issue in a timely manner at trial. A challenge to venue cannot be raised after filing an answer to the complaint. *See* Rule 1–012(B), (H)(1) NMRA 1997. Yet Heim did not contest venue until he filed a motion to dismiss more than three weeks after filing and serving his answer.

■ (8) Recognizing this difficulty, Heim argues that his motion constituted a motion for transfer of venue under the doctrine of forum non conveniens and that such a motion is not governed by the above rule. Although this argument may have had merit at one time, our Supreme Court recently held that New Mexico does not permit change of venue within the state on the ground of forum non conveniens. *See First Fin. Trust Co. v. Scott,* 122 N.M. 572, 929 P.2d 263 (1996). Therefore, Heim's venue argument must fail.

## III. DAMAGES

(9) Heim does not dispute the district court's finding that he breached a warranty to provide Manouchehri with a 100/100 x-ray machine. His appeal focuses on the propriety of the award of damages. The decretal language of the court's judgment was as follows:

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that [Manouchehri] is entitled to judgment against [Heim] in the amount of $1,900.00, for the cost of repair of the X-ray machine and the amount of $2,500.00 for incidental damages for a total of $4,400.00.

■ (10) A contract for the sale of merchandise is governed by Article 2 of the Uniform Commercial Code. *See* NMSA 1978, §§ 55–2–102 and –105(1) (Repl. Pamp.1993). For breach of warranty the buyer may recover direct, incidental, and consequential damages. The statutory provisions applicable to this appeal are NMSA 1978, §§ 55–2–714 and –715 (Repl. Pamp.1993). The pertinent portions of Section 55–2–714 state:

> (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
>
> (3) In a proper case any incidental and consequential damages under the next section may also be recovered.

Section 55–2–715 states:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include:
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Of the $4400 awarded by the district court, $1900 is for direct damages under Section 55–2–714 and $2500 is for damages under Section 55–2–715. Heim challenges both figures. We first discuss direct damages.

## A. Direct Damages

■ (11) The judgment awarded Manouchehri $1900 for the cost to repair the x-ray machine. The cost of repair can be an appropriate measure of direct damages. Although Section 55–2–714(2) sets the measure of direct damages for breach of warranty as the difference between the value of the goods as warranted and the value of the goods as accepted, often that difference can be approximated by the cost to repair the goods so that they conform to the warranty. For example, if it costs $200 to fix the x-ray machine so that it performed as a 100/100 machine, then one could assume that the unrepaired machine (the "goods accepted") was worth $200 less than the repaired machine (the goods "as warranted"). Thus, the cost of repair is commonly awarded as the direct damages. *See* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 10–2, at 554 (4th ed. 1995); *cf. State ex rel. Concrete Sales & Equip. Rental Co. v. Kent Nowlin Constr.*, 106 N.M. 539, 543, 746 P.2d 645, 649 (1987) (awarding the cost of reprocessing the material, noting the "special circumstances" language of Section 55–2–714(2)).

■ (12) As pointed out by Heim, however, there was no evidence at trial of the cost to repair the x-ray machine. On the contrary, the evidence at trial was that the machine could not be transformed into a 100/100 machine. Consequently, Manouchehri could not be awarded direct damages based on a cost of repair. As stated in a leading treatise:

There are many cases in which the goods will be irreparable or not replaceable and therefore the costs of repair or replacement cannot serve as a yardstick of the buyer's damages. In those cases, the court will have to find some other way to measure the difference between the value of the goods *as warranted* and the value of the goods as accepted.

1 White & Summers, *supra*, § 10–2, at 557.

■ (13) Nevertheless, we affirm the award of $1900 as direct damages. When to do so would not be unfair to the appellant, we can affirm a ruling by the trial court on a ground other than what was expressed by that court. *See Jaramillo v. Jaramillo*, 113 N.M. 57, 62, 823 P.2d 299, 304 (1991); *Westland Dev. Co. v. Romero*, 117 N.M. 292, 293, 871 P.2d 388, 389 (Ct.App.1994); *Naranjo v. Paull*, 111 N.M. 165, 170, 803 P.2d 254, 259 (Ct.App.1990). Such a course is particularly appropriate in this case because our review of the record indicates that the district court in fact computed the direct damages on a proper ground even though the judgment does not state that ground.

■ (14) At the hearing on Heim's motion for reconsideration, Heim's attorney properly stated the law, arguing that Manouchehri's direct damages should be limited to the difference between the value of the x-ray machine as warranted and the value of the machine as it was delivered to Manouchehri. He sought to set aside the award of $1900 on the basis that there was insufficient evidence to support it. Acknowledging that the sales price constituted sufficient evidence of the value of the machine as warranted, *see* 1 White & Summers, *supra*, § 10–2, at 557 ("[T]he purchase price of the damaged goods may be the best evidence of the value of the goods as warranted."), he focused his argument on the alleged absence of evidence to support a finding regarding the value of the machine delivered to Manouchehri.

(15) The district court did not dispute the contentions of Heim's attorney as to the proper measure of damages, but it rejected the claim that there was insufficient evidence regarding the value of the machine delivered to Manouchehri. Indeed, Finding No. 5 in the district court's decision states: "Any value to [Manouchehri] of the X–Ray machine 'as is' is offset by the cost to [Manouchehri] of having the machine removed from his premises." On appeal Heim has not challenged this finding. As we understand Find-

ing No. 5, the court determined that Manouchehri could not recover any money for the machine; at the conclusion of trial the court had said, "I presume that someone will be willing to remove the machine for its residual value." *See Herrera v. Roman Catholic Church,* 112 N.M. 717, 721, 819 P.2d 264, 268 (Ct.App.1991) ("Unless clearly erroneous or deficient, findings of the trial court will be construed so as to uphold a judgment rather than to reverse it."). Hence, we do not find it unfair to affirm the district court's award of $1900 in direct damages as the difference between the value of the x-ray machine as warranted and the value of the machine actually delivered to Manouchehri.

## B. Consequential Damages

(16) The district court's judgment awarded "$2500 for incidental damages." Again, the judgment was not prepared with sufficient care. The damage award was clearly for *consequential* damages, not *incidental* damages. *See* § 55–2–715 (defining "incidental" and "consequential" damages). Finding No. 6 of the district court's decision states: "[Manouchehri] has suffered consequential damages in the form of loss of business of at least $2,500.00 during the time [Manouchehri] reasonably waited for [Heim] to repair the X–Ray machine or otherwise perform under the guarantee."

(17) Manouchehri's testimony with respect to consequential damages was straightforward. He said that taking an x-ray would cost him from three to six dollars and he would charge "about $85 to $88" for taking and reading an x-ray. He also claimed that the inadequacy of the machine prevented him from taking at least 30 x-rays a month, although he had no documentation to support his estimate. Using the lowest possible profit per x-ray, Manouchehri contended in closing argument that the monthly loss would be $2370—computed by multiplying $79 net income per x-ray times 30 x-rays a month.

■ (18) Heim contends that the award is improper for three reasons. First, he contends that Manouchehri failed to present evidence that he could not avoid the damages by renting or buying a substitute machine. Second, he contends that any lost profits were not reasonably foreseeable. Third, he contends that the proof of damages was too indefinite. Each of Heim's arguments has some force. But they must be examined in light of the district court's award of only $2500. It appears that the district court considered the three matters raised by Heim and adjusted the award accordingly. We now examine each of Heim's arguments.

### 1. Failure to Obtain Replacement Machine

■ (19) Consequential damages are not recoverable if they could "reasonably be prevented by cover or otherwise." Section 55–2–715(2)(a). Heim argues that Manouchehri needed to present evidence that he could not avoid the damages by renting or buying a substitute machine. On the record before us, we reject the argument.

(20) Manouchehri testified that he asked Heim to have someone repair the machine and that Heim responded that he would have someone come to the office for that purpose. Manouchehri further testified that he talked to Heim on a monthly basis regarding the problem and that until about a month before he filed the lawsuit he believed that Heim would fix the problem.

■ (21) The UCC requirement to take reasonable steps to prevent consequential damages derives from standard contract law. In particular, guidance in interpreting Section 55–2–715(2)(a) can be found in the Restatement (Second) of Contracts § 350 (1981). *See* 1 White & Summers, *supra,* § 10–4, at 577 ("Restatement [§ 350] may be regarded as an articulation of the rules embodied in the adverb 'reasonably' in 2–715."). Restatement, *supra,* Section 350 reads:

Avoidability as a Limitation on Damages

(1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.

(2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss.

The comment to this section states that it may be reasonable to rely on a breaching party's assurances that the breach will be remedied. *See id.* cmt. g and illus. 19; *Steele v. J.I. Case Co.*, 197 Kan. 554, 419 P.2d 902, 911 (1966). *See generally* Gary D. Spivey, Annotation, *Seller's Promises or Attempts to Repair Article Sold as Affecting Buyer's Duty to Minimize Damages for Breach of Sale Contract or of Warranty*, 66 A.L.R.3d 1162, 1164 (1975) (courts generally recognize an excuse of mitigation duty when seller makes assurances regarding forthcoming performance, at least until it is no longer reasonable to rely on seller's assurances).

(22) We cannot say that it was unreasonable as a matter of law for Manouchehri to delay seeking a replacement machine for a few months. The district court found that Manouchehri "suffered consequential damages in the form of loss of business of at least $2,500.00 during the time [he] reasonably waited for [Heim] to repair the X–Ray machine or otherwise perform under the guarantee." The district court did not state how long it was reasonable for Manouchehri to wait, nor did it state how much business Manouchehri lost in any particular month. Nevertheless, we see no need for mathematical precision in the circumstances of this case. The question is only whether it was rational for the district court to find, on the basis of the evidence presented, that by the time Manouchehri should have stopped relying on Heim's promises, he had lost at least $2500 in profits. Our answer is yes.

## 2. Foreseeability

(23) Heim next argues that the lost profits cannot be awarded because Manouchehri failed to present any evidence on the issue of foreseeability. He relies on the language in Section 55–2–715(2)(a) that restricts recovery for consequential damages to losses "resulting from general or particular requirements ... of which the seller at the time of contracting had reason to know...." We are not persuaded.

(24) This was not a sale of a mass-produced item to an anonymous buyer. Heim knew his customer and knew how the x-ray machine was to be used. Any reasonable person in his position would assume that a doctor using such a machine would charge more for its use than the cost of operation and would earn income from it. Moreover, Manouchehri testified to conversations with Heim that at least touched on the economics of the machine. For example, Manouchehri related one occasion when parts from an old failed x-ray machine were in front of his office:

> [Heim] asked that I had that x-ray and what to do with them and how come it was still sitting there. And I told him that this was a failed x-ray and I am stuck with the loss of this much money. And at that time he promised me, quoting from him, that "I know a doctor that has just x-ray that you want. X-ray 100/100 is what you want, and I can get it for you and install in your office for this much money."

(25) On the evidence at trial the district court could properly find that lost income would be a foreseeable consequence of an underpowered x-ray machine. *Cf. Camino Real Mobile Home Park Partnership v. Wolfe*, 119 N.M. 436, 446, 891 P.2d 1190, 1200 (1995) ("In cases where profit is an inducement to making a contract, loss of profits as a result of the breach is generally considered to be within the contemplation of the parties and recovery for lost profits will be allowed as damages if causation is proved with reasonable certainty."). Although Manouchehri did not tell Heim how much income he would earn from use of the machine, he did not need to do so in order to recover consequential damages so long as the consequence of lost income was reasonably foreseeable. The law does not require those who enter into contracts to disclose to other parties the profits they expect to make from the contracts. *See* Richard A. Posner, *Economic Analysis of Law* 115 (3d ed. 1986) ("Any other rule would make it difficult for a good bargainer to collect damages unless before the contract was signed he had made disclosures that would reduce the advantage of being a good bargainer—disclosures that would prevent the buyer from appropriating the gains from his efforts to identify a resource that was undervalued in its present use."); *see generally* Melvin Aron Eisenberg,

*The Principle of Hadley v. Baxendale,* 80 Cal.L.Rev. 563, esp. 588–90 (1992). Perhaps some limit could be placed on recovery for particularly large lost profits, *cf.* Restatement, *supra,* § 351(3) (court may limit damages for foreseeable loss "in order to avoid disproportionate compensation"), but the award of $2500 in this case was within proper bounds.

### 3. Certainty of Proof of Damages

(26) Finally, Heim argues that the evidence of lost profits was not certain enough. We disagree. We recognize that "when it is *possible* to present accurate evidence on the amount of damages, the party upon whom the burden rests to prove damages must present such evidence." *First Nat'l Bank v. Sanchez,* 112 N.M. 317, 323–24, 815 P.2d 613, 619–20 (1991) (emphasis added) (setting aside damage award of $1,053,000 for several reasons, including the fact that the award greatly exceeded the amount that the evidence could support). This requirement must be understood, however, in the context of the amount at stake. What it is "possible" to present in a suit for a million dollars may be an excessive burden for a small claim. Although Manouchehri's evidence was minimal, it was adequate in the circumstances. The absence of detail and documentary corroboration detracted from the weight of the testimony, but the district court could still find it sufficiently credible to support the $2500 award.

## IV. CONCLUSION

(27) We affirm the judgment below.

(28) IT IS SO ORDERED.

PICKARD and ARMIJO, JJ., concur.