2 P.3d 871

2000-NMCA-037

**Rebecca SITTERLY, as Conservator for Emily Seten, Plaintiff–Appellee,**

v.

**Muriel T. MATTHEWS, as Trustee for the Muriel T. Matthews Trust, Defendant/Counterclaimant–Appellant.**

No. 19,577.

Court of Appeals of New Mexico.

March 7, 2000.

Certiorari Denied, No. 26,258, April 27, 2000.

Kim E. Kaufman, Rebecca Sitterly, Albuquerque, for Appellee.

Peter H. Johnstone, Law Office of Peter H. Johnstone, Albuquerque, for Appellant.

## OPINION

PICKARD, Chief Judge.

{1} Rebecca Sitterly (Sitterly), as conservator for Emily Seten (Seten), filed suit against Muriel T. Matthews (Matthews), as Trustee for the Muriel T. Matthews Trust (Trust), to vacate an easement on Seten's property that ran in favor of the Trust's property (Matthews Property). At trial, Sitterly argued the easement for ingress and egress should be vacated because (1) the purpose for the easement ceased to exist when the Trust obtained another means of accessing the Matthews Property and (2) the Trust abandoned the easement not only by failing to use it, but also by erecting, or allowing Seten to erect, a fence that made it impossible to use.

{2} Matthews counterclaimed that Sitterly, by filing suit against her, was in breach of contract because Matthews and Seten had previously executed an agreement whereby each party allegedly agreed to not sue the other over any dispute concerning their respective properties. On the easement issues, Matthews argued that (1) the cessation of purpose doctrine does not apply in this case because the easement can still be used for

the purpose of ingress and egress and (2) the easement has not been abandoned, but merely neglected or temporarily suspended.

{3} The trial court denied Matthews' counterclaim on the ground that the parties did not intend to bar this lawsuit, which involves an easement dispute, by agreeing to resolve the prior dispute, which involved a property transfer allegedly effectuated by fraud and undue influence. The trial court terminated the easement on both grounds set forth in Sitterly's complaint. We affirm.

## BACKGROUND

{4} The property at issue (Nuanes Property) originally belonged to the Nuanes family. The Nuanes Property was bounded on its north, east, and south sides by other residences, and it was bounded on its west side by a public street (San Pasquale). At some point, the Nuanes family split its property into a north parcel (now the Matthews Property) and a south parcel (now the Seten Property), both of which contained houses occupied by Nuanes family members. The house fronts were located very close to San Pasquale, so the Nuaneses had to park their vehicles in the backyards of their respective parcels. The diagram below shows the location of the properties.

{5} At the time when the Nuanes family split their property into two parcels, the backyard to the north parcel could only be accessed from San Pasquale. The San Pasquale access-way required the north parcel's owners to travel along the south side of the residence on the south parcel, across the backyard of the south parcel, and into the backyard of the north parcel (see diagram). Although the San Pasquale route was inconvenient, the Nuanes family used it to access the backyard of its north parcel as a matter of necessity.

{6} In the 1940s, the Love family obtained the south parcel by tax deed. The tax deed did not expressly reserve an easement for ingress and egress across the south parcel, but the Nuaneses continued to use the San Pasquale route to access the north parcel.

{7} In 1961, the Love family transferred the south parcel to Seten's trustee. The deed reserved a 12–foot easement across the south parcel for ingress and egress for the benefit of the owners of the north parcel who were still the Nuanes family. In furtherance of this transfer, the Love family brought suit against the Nuanes family and others to vacate any existing easement on the south parcel.

{8} In 1962, the trial court entered an amended and modified final decree in which it imposed a 12–foot easement, for ingress

and egress, in favor of the Nuanes family. Four years later, the Nuanes family brought a quiet title suit against several parties, including Seten's trustee. The district court affirmed the decree it had entered in the 1961 Love lawsuit.

{9} In 1988, Seten, who was 87 years old and of questionable competence, transferred the Seten Property to a person who two years later conveyed it to the Trust. In August 1990, the Trust purchased the Matthews Property for the purpose of converting the residence located on it into apartments. One month later, the Trust purchased the property to the east side of the Matthews Property (19th Street Property) for the purpose of providing its apartment tenants with easier, safer, and more convenient access to the Matthews Property. After the Trust purchased the 19th Street Property, the Matthewses and their tenants exclusively used the 19th Street access-way for ingress and egress to the backyard of the Matthews Property.

{10} In late 1991 or early 1992, Muriel Matthews erected, or permitted Seten to erect, a fence between the Matthews Property and the Seten Property. The fence completely blocked the easement, making it impossible for vehicles to ingress and egress from the Seten Property to the rear of the Matthews Property. At the time the fence was erected, the easement had no longer been needed or used for more than one year because of the more convenient, less circuitous route provided by the 19th Street access-way.

{11} In 1994, the Trust transferred the Seten Property by deed to another trust. Later that year, a conservator was appointed for Seten, and he filed suit on Seten's behalf against various Matthews entities in order to cancel Seten's transfer to the Trust on the grounds that it was procured by fraud and undue influence. This lawsuit was settled (1995 Agreement) three months later. Under the terms of the 1995 Agreement, the Seten Property was returned to Seten. The signatories to the 1995 Agreement specifically and mutually released each other from any claims which have or may develop "from the facts or issues involved in this lawsuit." Sitterly acted as the conservator's legal counsel in this matter.

{12} In 1996, Sitterly was appointed to serve as Seten's conservator at a conservatorship proceeding. In 1997, Sitterly filed suit in order to extinguish the easement because it reduced the value of the Seten Property.

## DISCUSSION

### I. PRIOR RELEASE

{13} At trial, Matthews asked the trial court to dismiss Sitterly's complaint on the ground that by signing the 1995 Agreement, Matthews and Seten had agreed to not sue each other over any dispute concerning their respective properties. The trial court denied Matthews' request on the ground that the parties did not intend to bar the instant lawsuit, which involves an easement dispute, by agreeing to resolve the earlier dispute, which involved a property transfer allegedly effectuated by fraud and undue influence.

{14} On appeal, Matthews claims the 1995 Agreement is unambiguous and thus argues that the trial court erred when it looked beyond the four corners of the contract and considered the intentions of the parties. Alternatively, Matthews claims that if the 1995 Agreement was ambiguous, the trial court erred by concluding that the parties, in signing the 1995 Agreement, did not intend to bar the instant lawsuit.

{15} We must interpret the 1995 Agreement, along with its release provisions, in the same way that we would interpret any other contract. *See Ratzlaff v. Seven Bar Flying Serv., Inc.*, 98 N.M. 159, 162, 646 P.2d 586, 589 (Ct.App.1982). Whether a contractual provision is ambiguous is a question of law, which we review de novo on appeal. *See Mark V, Inc. v. Mellekas*, 114 N.M. 778, 782, 845 P.2d 1232, 1236 (1993).

{16} In the case at bar, the 1995 Agreement is very broadly worded in that it purports to release the parties from liability for a vast range of claims and causes of action. However, it also limits its application to the claims contained in or developed from the facts or issues involved in that lawsuit. It is not clear from the 1995 Agreement just

what facts and issues were involved in that lawsuit. As a result, the scope of the release created by the 1995 Agreement is ambiguous. *See id.* at 781–82, 845 P.2d at 1235–36 (concluding that ambiguity exists when a contract is reasonably susceptible of different constructions). In order to resolve this ambiguity, a court may look not only to the language contained in the 1995 Agreement, but also to the circumstances surrounding its execution in an attempt to determine as a factual matter the intent of the parties. *See id.*

■ {17} At trial, Sitterly testified that she did not intend to address in the 1995 Agreement the easement issue presented by her complaint in this lawsuit because she sought only the cancellation of Seten's transfer in the 1995 Agreement and nothing more. According to Sitterly, the earlier lawsuit sought relief on the narrow ground that Leone Matthews had obtained the Seten Property through fraud and undue influence. According to Matthews' brief, "[r]ather than litigate the matter, the parties agreed to settle the litigation by Leone Matthews returning the property deeded to her by Emily Seten to the Conservator. . . ."

{18} Sitterly acknowledged before the trial court that she referred to the easement in the 1995 Agreement, but she testified that she did so only for the purpose of ensuring that Seten received the same description of real property that Leone Matthews had taken in the Seten Transfer. Sitterly also testified that the easement was so far removed from her consideration at the time she drafted the 1995 Agreement that she did not even know where the easement was located. The trial court found that her lack of knowledge was reasonable because the easement was not clearly described in the deed, and there was no indication on the property, itself, of the existence of any easement.

{19} Based on Sitterly's testimony, the trial court found that the earlier lawsuit sought the return of Seten's property and did "not involve any allegation concerning or issue involving . . . the ultimate abandonment of or cessation of purpose of the easement across the Seten Property." The trial court's finding is supported by substantial evidence.

*See Landavazo v. Sanchez,* 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990) (ruling that substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion).

■ {20} Matthews' retort is that she also testified at trial and her testimony reflects her understanding that, in signing the 1995 Agreement, she terminated "any and all claims or causes of action that could be brought by [Sitterly] against [Matthews] in regard to the property. . . ." We reject Matthews' claim on the grounds that she essentially asks us to reweigh the evidence and reassess the witnesses' credibility. *See Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 476, 697 P.2d 156, 159 (Ct.App.1985) (ruling that when considering a substantial evidence claim, we may not reweigh the evidence or substitute our judgment for the factfinder). Accordingly, we affirm this issue.

## II. EASEMENT

{21} At trial, Sitterly asked the trial court to vacate the easement in favor of the Matthews Property on the grounds that (1) the purpose for the easement ceased to exist when the Trust obtained another means of accessing its property and (2) the Trust abandoned the easement not only by failing to use it, but also by erecting, or permitting Seten to erect, a fence that made it impossible to use. *See* 28A C.J.S. *Easements* § 119 (1996) (footnotes omitted) (stating that an "easement granted for a particular purpose terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment"). The trial court granted Sitterly's request for relief on both grounds set forth in her complaint. We review each basis for relief in turn.

### A. *Standard of Review*

■ {22} The issues of whether the underlying purpose of an easement has ceased to exist and whether an easement has been abandoned are questions of fact. *See Olson v. H & B Properties, Inc.,* 118 N.M. 495, 498, 882 P.2d 536, 539 (1994) (interpreting the trial court's role as factfinder in a cessation

of purpose case); *Ritter–Walker Co. v. Bell,* 46 N.M. 125, 128, 123 P.2d 381, 383 (1942) (ruling the trial court's determination on abandonment of easement issue subject to substantial evidence standard). We review factual questions for substantial evidence. *See Baker v. Benedict,* 92 N.M. 283, 287, 587 P.2d 430, 434 (1978). Substantial evidence is relevant evidence that a reasonable mind would find adequate to support a conclusion. *See Landavazo,* 111 N.M. at 138, 802 P.2d at 1284. Additionally, we review the trial court's conclusions of law de novo to determine whether the trial court correctly applied the law to the facts. *See Jacob v. Spurlin,* 1999–NMCA–049, ¶ 7, 127 N.M. 127, 978 P.2d 334.

**B.** *Cessation of Purpose*

■ {23} An easement created to serve a particular purpose terminates when the underlying purpose for the easement ceases to exist. *See Olson,* 118 N.M. at 498, 882 P.2d at 539. In a cessation of purpose case, the trial court must first determine why the easement was created. *See id.* If the trial court determines that the purpose no longer exists, then it may terminate the easement. *See id.*

**1.** *Purpose*

■ {24} The trial court determined that the easement in favor of the Matthews Property was created for the purpose of ingress and egress as a matter of necessity. The trial court based its determination on the following uncontested facts:

3. Both the Matthews Property and the Seten Property were at one time owned by a common grantor, the Nuanes family, which purchased the property in 1902. At some undeterminable time, the property was split into a north and south parcel, both occupied by Nuanes family members. . . .

4. The north parcel (now the Matthews Property) had no access from 19th Street directly to the rear, and had no car access from San Pasquale except by the circuitous route of going along the south side of the residence on the south parcel (now the Seten property), across the backyard of the south parcel, and into the backyard of the Nuanes' north parcel. By necessity, the Nuanes family used this method of access to get to the rear of their residence, which otherwise would have been completely inaccessible.

5. R.E. Love and Dovie May Love obtained the Seten Property by a tax deed which did not reserve any easement for any purpose, but the Nuanes family continued to use the access way . . . .

{25} On appeal, Matthews attacks the trial court's finding that the easement was an easement by necessity. Matthews argues that in 1962, as a result of the quiet title action filed by the Love family against the Nuanes family and others, the district court confirmed the easement as an easement by grant. The thrust of Matthews' argument appears to be that if the easement can be characterized as an easement by grant, then the trial court misapplied the cessation of purpose doctrine. *See Valicenti v. Schultz,* 27 Misc.2d 801, 209 N.Y.S.2d 33, 37 (1960) ("[W]hen we are dealing with an easement by grant, the fact that it may have also qualified as an easement of necessity, does not detract from its permanency as a property right, which survives the termination of the necessity.").

■ {26} We reject Matthews' argument because, as stated above, the Nuanes family did not take any easement by grant when the Love family obtained the south parcel by tax deed in the 1940s. We also reject Matthews' argument insofar as it suggests that the original conveyance to the Love family was transformed from an easement by necessity to an easement by grant merely because subsequent conveyance instruments contained easement descriptions.

{27} The trial court's finding that the easement in favor of the north parcel was implicitly reserved as a matter of necessity is supported by substantial evidence. *See Hurlocker v. Medina,* 118 N.M. 30, 31, 878 P.2d 348, 349 (Ct.App.1994) (ruling that easements by necessity arise from implied grant or reservation of right of ingress and egress to landlocked parcel); Black's Law Dictionary 528 (7th ed.1999) (defining "reserved easement" as "[a]n easement created by the

grantor of real property to benefit the grantor's retained property and to burden the granted property"). Furthermore, substantial evidence supports the trial court's determination that the "easement across the Seten Property began as an easement by necessity which was [merely] incorporated into the deeds relating to both properties by judicial decrees of 1961 and 1966." The district courts entered these decrees at a time when the San Pasquale route was still the only access-way to the north parcel's backyard. There is no evidence in the decrees that causes us to believe that the district courts intended to expand the easement by necessity to anything more. As a consequence, subsequent takers to the north parcel only received an easement by necessity. *See* 28A C.J.S. *Easements* § 110 (1996) (stating that a grantee "can obtain no greater easement than the grantor had acquired"); *Abo Petroleum Corp. v. Amstutz*, 93 N.M. 332, 335, 600 P.2d 278, 281 (1979) (holding that grantor cannot convey more than what is originally acquired).

### 2. *Cessation*

{28} After finding that the easement was created for the purpose of ingress and egress as a matter of necessity, the trial court then determined that the easement's purpose ceased to exist when the Trust purchased the 19th Street Property. The trial court based its determination on the following uncontested fact:

17. On September 25, 1990, the Muriel T. Matthews Trust purchased the 19th Street Property. The stated purpose for the purchase was to provide better access to the Matthews Property.... The 19th Street access was a direct route into the Matthews Property, was safer and was more convenient for most routes into the area.

{29} The trial court's determination that the easement was rendered unnecessary when the Trust purchased the 19th Street Property is supported by substantial evidence. We are less certain, however, about accepting the trial court's determination that the easement's purpose ceased to exist when the Trust obtained an alternative means of accessing the Matthews Property. *See Crabbe v. Veve Assocs.*, 150 Vt. 53, 549 A.2d

1045, 1048 (1988) ("Although [the easement holders] have access to the road by means of an alternative, circuitous route, this does not mean that the purpose of the easement[ ] has ceased to exist.").

{30} Notwithstanding our reservation in applying the cessation of purpose doctrine to the case at bar because the easement here was not an easement by grant, we nevertheless uphold the trial court's decision on the ground that the easement, as an easement by necessity, became a nullity when the Trust obtained another means of ingress and egress. *See* 25 Am.Jur.2d *Easements and Licenses* § 108 (1996) ("[A]n easement of necessity lasts only as long as the necessity continues."). Sitterly argued throughout the course of this case that the easement was created as a matter of necessity and that the necessity came to an end when the Trust purchased the 19th Street Property; thus, we may uphold the trial court's decision to vacate the easement on that basis. *See Manouchehri v. Heim*, 1997–NMCA–052, ¶ 13, 123 N.M. 439, 941 P.2d 978 ("When to do so would not be unfair to the appellant, we can affirm a ruling by the trial court on a ground other than what was expressed by that court."). We next consider whether the trial court could also have properly granted Sitterly's request for relief on the ground of abandonment.

### C. *Abandonment*

{31} The owner of the dominant property may abandon the right to an easement. *See Posey v. Dove*, 57 N.M. 200, 211, 257 P.2d 541, 548 (1953). In order to abandon such an easement, the owner must evince a clear and unequivocal intention to do so. *See id.* The owner's "intention may be evidenced by acts as well as words[,] but where an act is relied on as the proof, it must unequivocally indicate such intention." *Id.*

{32} The trial court found that the Trust evinced a clear and unequivocal intention to abandon the easement based on the following uncontroverted facts:

purchase of the 19th Street Property which afforded safer, more convenient and more direct access to the Matthews Property; use of the new access for ingress and egress since shortly after September, 1990;

instructions to tenants of the Matthews Property to use the 19th Street Property for ingress and egress; statements of John Matthews that the 19th Street Property was being purchased to provide access to the [Mathews] Property; tearing down a fence, shrubbery and structures which separated the Matthews Property from the 19th Street Property in order to create the new access; construction of or consent to the construction of a fence which completely blocked the easement on the Seten Property; failure to take any action to keep the easement open; and allowing the easement to be completely obstructed for many years prior to trial by the gate on the Seten Property and by automobiles of Ms. Seten's tenants.

{33} Matthews does not contest the trial court's numerous findings in support of its determination, but instead only disputes whether those findings provide substantial evidence of abandonment. Yet from the uncontroverted facts, we hold that the trial court could reasonably conclude that the Trust clearly and unequivocally abandoned the easement. *See Kelly v. Smith*, 58 Misc.2d 883, 296 N.Y.S.2d 451, 452 (Sup.Ct. 1969) (finding that the act of closing off of an easement by a flower bed evinced the unequivocal intention to abandon the easement, as did the act of purchasing, then using of another parcel as the sole means of ingress and egress); *Sieber v. White*, 366 P.2d 755, 759–60 (Okla.1961) (holding that the trial court's finding of abandonment was not against the weight of the evidence where an iron railing fence was erected on the easement and the lot was combined with another one so that another means of access was obtained); *see also Montoya v. Torres*, 113 N.M. 105, 109, 823 P.2d 905, 909 (1991) (stating substantial evidence standard).

**CONCLUSION**

{34} For the reasons stated, we affirm.

{35} **IT IS SO ORDERED.**

APODACA, and WECHSLER, JJ., concur.