523 P.2d 549

**LAS CRUCES URBAN RENEWAL AGENCY, a public body, Plaintiff-Appellee,**

**City of Las Cruces, New Mexico, a municipal corportion, Involuntary Plaintiff-Appellee,**

v.

**EL PASO ELECTRIC CO., a Texas corporation, and Mountain States Telephone and Telegraph Co., a Colorado corporation, Defendants-Appellants.**

No. 9644.

Supreme Court of New Mexico.

Jan. 11, 1974.

Rehearing Denied June 18, 1974.

J. D. Weir, Las Cruces, for El Paso Electric Co.

Pauline J. Nelson, Albuquerque, Darden, Sage & Darden, Las Cruces, for Mountain States Telephone & Telegraph Co.

T. K. Campbell, Las Cruces, for City of Las Cruces.

R. C. Garland, Las Cruces, for Urban Renewal Agency.

## OPINION

STEPHENSON, Justice.

This is a declaratory judgment action brought by appellee Las Cruces Urban Renewal Agency ("the Agency"), a public body corporate and politic, in which the City of Las Cruces ("the City") joined as an involuntary plaintiff, against the appellant utility corporations, El Paso Electric Company ("the Company") and Mountain States Telephone and Telegraph Company ("Mountain Bell") in the District Court of Dona Ana County. The action sought a declaration of the rights of the parties as to a liability for a portion of the costs associated with the removal from overhead and relocation underground of certain of the appellants' facilities within the Las Cruces Downtown Urban Renewal Project ("the Project").

The case was tried to the court upon stipulated facts and legal issues. The court rendered its decision in some detail followed by a declaratory judgment which in ultimate effect held that neither utility company was entitled to be compensated by either the City or the Agency for any portion of the costs involved in relocating their lines. Indeed, the judgment might be read to mean that the Agency was precluded from paying any sums on these accounts to the utilities regardless of their source. However, the pleadings, stipulation of legal issues and the briefs make clear that we are only concerned with the payment of funds emanating from the City.

This appeal followed.

The first issue we are called upon to decide involves a construction of a portion of the Company's franchise. It has been stip-ulated that Mountain Bell would be bound by our decision regarding the Company.

The record discloses that following creation of the Agency pursuant to the Urban Renewal Law (now compiled as §§ 14–47–1 to 14–47–20, N.M.S.A.1953 (Supp.1973), and adoption of plans for a project (which at material times contemplated the utility relocation in question), the City by ordinance dated February 19, 1968 granted and the Company accepted a franchise for the construction and maintenance of overhead lines and facilities over streets and alleys including those within the project. § 9 of the franchise provides:

> "The Company agrees that it shall encourage and promote the design and use of underground cables and facilities for the downtown development area at the request of the City of Las Cruces and PROVIDED, however, that the City of Las Cruces and the property owners involved are agreeable in supporting the cost differential for this project . . . ."

Thereafter on July 9, 1968 the Agency and the United States executed a Loan and Grant Contract providing, inter alia, for the sharing of costs, 25% by the City and 75% by the United States. It is the propriety of payment of the City's share of the relocation costs which has been drawn into question by this litigation.

On June 1, 1971, the City, the Agency and the Company entered into an interim agreement which contemplated the practical necessity of the Company commencing the relocation work pending a final comprehensive contract. The Company was to receive certain interim payments from the Agency, to be credited on the City's obligations under the final contract. Work presumably proceeded. This action was filed on October 18, 1971 and the complaint was amended on February 18, 1972. Meanwhile, on November 15, 1971 the City, the Agency and the Company had entered into a comprehensive agreement wherein it was agreed, inter alia, that the Agency, upon

demand by the City, would pay the Company for life remaining in existing overhead facilities to be abandoned, cost of removal less salvage realized from disposal of removed materials, the "underground cost differential" (actual cost of the underground installation less the estimated reproduction costs of an equivalent overhead system) and various other temporary and transitional expenses. The installed facilities were of course to be the property of the Company.

As we have said, the case was presented not only upon stipulated facts, but upon stipulated legal issues which were accepted and approved by the court. One of these issues, the only one pertinent to this phase of our opinion, was:

"2. Is § 9, Ordinance 3, between the involuntary plaintiff, City of Las Cruces, a municipal corporation, and defendant El Paso Electric Co., invalid and unconstitutional?"

The trial court decided that § 9 was vague and indefinite, failing to describe with certainty its true meaning, and hence unenforceable. We will first consider the correctness of this ruling. The trial court also held § 9 unconstitutional, a feature which we will consider later. It will be observed from the stipulated issue that neither the interim contract of June 1, 1971, as amended, nor the comprehensive agreement of November 15, 1971, all relative to payment of utility relocation costs as previously recounted, are pertinent, and played no part in the proceedings below as to this phase of the case. The trial court did hold the comprehensive agreement of November 15, 1971 unconstitutional, but that is another question.

We view § 9 of the franchise in a contractual setting. This franchise was a contract. See, Southern Union Gas Company v. City Of Artesia, 81 N.M. 654, 472 P.2d 368 (1970) referring to Mountain States Tel. & Tel. Co. v. Town of Belen, 56 N.M. 415, 244 P.2d 1112 (1952); Town of Gallup v. Gallup Elec. & Power Co., 29 N.M. 610, 225 P. 724 (1924); 12 McQuillin, The

Law of Municipal Corporations § 34.06, (rev. ed. 1970).

The franchise as a contract, the rules of contractual construction which apply and whether, gauged thereby, § 9 is enforceable are matters which have received scant attention in the briefs. A good deal is said concerning federal statutory authority, our Urban Renewal Law, whether relocation is authorized thereby, whether relocation is a public purpose, eminent domain, the police power and our precedents on utility relocations, none of which seem germane to the precise point under consideration.

■ Considered as a contractual provision to be construed as written, we agree with the trial court that § 9 is so vague, indefinite and ambiguous as to be unenforceable.

It would probably be sufficient to point out that § 9 did not require the City to pay 25% of the relocation expenses. Delving somewhat deeper, it is apparent that more questions are generated by § 9 than answers supplied. Who has agreed to do what? For example, what does "encourage and promote" mean? Does it mean advertising or general public relations work? Does it extend to actually installing underground cables? And what did the parties intend by "supporting the cost differential"? Moral support? Monetary? If the latter, to what extent? Was the Company, under § 9, obligated to install underground cables? Could it, without more, have been required to do so? Obviously not. And had it undertaken such work relying on § 9, could it have collected the differential from the City? Certainly not. In any case, the City was only required to "support" the evolution in conjunction with "the property owners involved" (who are they?) and such property owners, whoever they may be, are certainly not "involved" in this fact situation.

Counsel for the utilities stated to us on argument that § 9 was intended to recognize that a problem existed. One might go further and accept the section as a state-

ment of policy. But to constitute an enforceable contractual provision is another matter entirely.

> "A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think they have made a contract; they must have expressed their intentions in a manner that is capable of understanding. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of the agreement are."

1 Corbin on Contracts § 95 at 394 (rev. ed. 1963). The Restatement (Second) of Contracts § 32 (1973) is similar.

" § 32. Certainty.

(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

(3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."

The City and the Agency further contend that § 9 is invalid by reason of its violation of art. IX, § 14 of the New Mexico Constitution which prohibits a municipality from directly or indirectly lending or pledging its credit or making any donation to or in aid of any private corporation. The trial court held that such was the case.

■ Having held that § 9 is so vague, ambiguous, indefinite and uncertain as to be unenforceable, there is no occasion for us to pass on its constitutionality. Constitutional questions are normally not decided by this court unless such a decision is necessary to the disposition of the case. Huey v. Lente, 85 N.M. 597, 514 P.2d 1093

(1973); Ratliff v. Wingfield, 55 N.M. 494, 236 P.2d 725 (1951); State v. Stapleton, 48 N.M. 463, 152 P.2d 877 (1944).

■ The utilities next argue that payment of the cost differential was authorized by § 14–47–9.1, N.M.S.A.1953 (Supp. 1973). That section provides for the payment by municipalities of the expense of relocation of facilities of the sort with which we are here concerned in urban renewal projects. The problem here, however, is that the statute contains a proviso stating:

> "Provided further, this section shall not apply to any existing urban renewal project presently fully approved by the local governing body, and in execution."

That statute became effective April 7, 1969. On that date, urban renewal was afoot in Las Cruces and various documents had been executed concerning it, but these documents were, in certain respects, amended thereafter. We therefore must decide whether or not, under the facts of this case, the Project was "fully approved by the local governing body, and in execution" on April 7, 1969.

The trial court found as a fact that the project in question was not only entered into but fully approved and in execution prior to the enactment of § 14–47–9.1, supra, and concluded that the statute had no application. The same result would flow if the project was approved and in execution prior to the effective date of the statute.

The record reflects that urban renewal had its inception on March 7, 1966 with the resolution of the City approving an urban renewal plan. Thereafter, but prior to April 7, 1969, further resolutions were adopted on the subject. Cooperative agreements among the Agency, the City and the Department of Housing and Urban Development were entered into which were in certain respects amended. On July 9, 1968 a Loan and Grant Contract among the City, the Agency and the United States was entered into and execution of that contract was in process. It was also amended prior to April 7, 1969. The prob-

lem here arises from the fact that on June 22, 1970, subsequent to the effective date of § 14–47–9.1, supra, a supplemental cooperative agreement was entered into by the mentioned parties which increased the funds to be loaned and credits granted on some items and decreased on others. The total authorized loan amount was increased, the schedule of repayments was modified and the contract, as amended, was further amended in other ways.

The Company argues, without citation of authority, that by reason of this subsequent amendment of the Loan and Grant Contract the project ipso facto was not fully approved or in execution when § 14–47–9.1, supra, became effective.

We fail to see how this necessarily follows. So far as appears from the record there was an urban renewal project on April 7, 1969 which the City had fully approved and which was at that time in execution, factors which preclude the operation of the statute. We sense no particular reason why the subsequent amendment of one of the important documents had some effect of relation back to change the status of the project as it existed when the statute became effective.

This point is determined adversely to the utilities.

The utilities' next argument concerns estoppel. They point to the execution of the franchise including the lamented § 9. They mention the execution of a cooperation agreement between the Agency and the New Mexico State Highway Department pursuant to which state money expended on urban renewal streets constituting parts of intra and inter-state highways within the project might be claimed by the Agency as "local grants-in-aid," pursuant to which the Company, at the request of the City and Agency, relocated its overhead facilities underground on Amador Street at a cost of some forty-one thousand dollars which was paid the Company without question. We digress to point out that this payment is not in issue here and

was made under the authority of a different statute relative to utility relocations on highway projects. § 55–7–26, N.M.S.A. 1953 (Repl.Vol. 8, pt. 2, 1962). That payment does not involve the legal questions with which we are concerned here.

In any case, the utilities go on to say that the Agency and the City at all times acknowledged, admitted and agreed to pay the cost differential until a local grand jury became involved. They say that the City has and is receiving credit from the Agency as non-cash grants in aid in a proprietary capacity for relocation or improvement costs of the City's water, gas, sewer and storm drainage facilities. The utilities then assert that:

"Clearly under such facts appellees are equitably estopped to assert invalidity of any payment to appellant El Paso Electric Co. of the cost differential necessitated by the project in conversion from an overhead to an underground electrical distribution facility, with its required capital expenditures."

The elements of equitable estoppel are not in doubt in New Mexico. They have been stated in a number of cases. For example, in In re Williams' Will, 71 N.M. 39, 68, 376 P.2d 3, 23 (1962), quoting with approval from Westerman v. City of Carlsbad, 55 N.M. 550, 555, 237 P.2d 356 (1951) the court said:

"The elements of equitable estoppel are well defined in New Mexico and are fully set forth in the case of Westerman v. City of Carlsbad, 55 N.M. 550, 237 P.2d 356, wherein the court states:

'The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party;

(3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are:

(1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.' "

■ The trial court concluded that there was no estoppel. We agree. Considering the stipulated facts, as expanded by the material which appears in the record and is referred to in that stipulation, we are not disposed to now hold that estoppel applies as a matter of law. Key elements prerequisite to its application seem to be lacking. We know of no misrepresentation or concealment of any material fact. So far as we are aware, the Company had the same knowledge of the facts as the City. If there was no misrepresentation or concealment there could be no detrimental reliance thereon. We cite these missing elements as examples. Other elements are lacking as well.

Finally the utilities assert that the trial court erred in directing them to proceed with the relocation of their facility. The trial court, in its judgment, directed:

"12. That the Defendant El Paso Electric Co. is hereby directed to proceed with the removal of its overhead facilities and the placing of same underground at its own expense; and, that the said Defendant Mountain States Telephone and Telegraph Co. proceed with the removal of its overhead facilities and the placing of same underground at its own expense."

At first blush, the utilities' contention presents a rather serious attack on the judgment. Clearly the quoted portion of the judgment grants to the City and Agency in personam relief in the nature of a mandatory injunction. Yet the amended complaints seek merely declaratory relief. The stipulation of facts and legal issues did not expand upon, but reiterated the relief sought. There were no proceedings for further relief to implement the court's declarations as provided in § 22–6–2, N.M. S.A.1953. Moreover, the quoted portion of the court's judgment would appear to be predicated upon a prior paragraph which declares that the City had been acting in the exercise of its valid police power, yet we are not aware from the record of the City having attempted to exercise its police power to require the relocation of the facilities in question. To the contrary, it has sought to accomplish this end by contract.

However, the argument advanced by the utilities does not touch upon the matters we have mentioned in the preceding paragraph. To the contrary, they merely assert in a rather formalistic way that by reason of all their prior arguments upon the law, of which we have already made disposition, it was error for the trial court to enter paragraph twelve of its judgment. Having fully covered these issues we feel no need to touch upon them further.

Finding no error, the judgment of the trial court will be affirmed.

It is so ordered.

OMAN and MARTINEZ, JJ., concur.