1999-NMCA-049

978 P.2d 334

**Bernard JACOB, Plaintiff–Appellee,**

v.

**Odell SPURLIN, Defendant–Appellant.**

**No. 19501.**

Court of Appeals of New Mexico.

Feb. 9, 1999.

Certiorari Denied, No. 25,672,
April 12, 1999.

F. Randolph Burroughs, Burroughs & Rhodes, Alamogordo, for Appellee.

W.T. Martin, Jr., Martin & Shanor, Carlsbad, for Appellant.

### OPINION

PICKARD, Chief Judge.

{1} Defendant appeals from a judgment in favor of Plaintiff, holding that Defendant was liable to Plaintiff for payments due on a lease and a promissory note. Defendant claims that his liability was either assigned to a corporation and thus could not be attributed to him or else discharged in bankruptcy. We disagree and affirm.

### FACTS

{2} Plaintiff owned commercial property. In 1989, Plaintiff leased the property to Defendant, who was doing business as a video rental store called Video One, for a term of years. The lease provided that Defendant could assign it without Plaintiff's consent. In February 1990, the parties executed an addendum to the lease, changing to some extent the precise location of the premises, increasing the rent, and extending the term of the lease to ten years from the date of occupancy of a new building the parties contemplated. Shortly after the execution of the original lease, Defendant, together with his wife and son, incorporated S & S Investments, Inc. (hereinafter "S & S Investments"). In March 1990, Defendant assigned all his right, title, and interest in the lease to S & S Investments.

{3} Notwithstanding the assignment, in August of 1990, Defendant personally signed a promissory note in favor of Plaintiff for $15,000, which represented costs of remodeling the building. The note did not contain a schedule of payments. On December 5, 1990, the parties again personally executed a second addendum to the lease, so that the rent was increased by an amount intended to amortize the $15,000 note over the remainder of the ten-year term of the lease. At this time, Defendant was no longer operating the video store as Video One, but instead as Showtime Video. The addendum provided: "NOTE TO BE NULL AND VOID. ¶ 4. IN EVENT OF SALE OF SHOWTIME VID-EO THE BALANCE OF UNAMORTIZED NOTE TO BE PAID TO LESSOR AND MO. RENTAL WILL REVERT" to the amount it was prior to the addendum.

{4} On December 12, 1990, Defendant filed a petition under the federal bankruptcy act, and in February 1992, he was discharged. Defendant never told Plaintiff about his assignment of the lease to S & S Investments. Defendant did not schedule either the promissory note or the lease as assets or debts of his estate in the bankruptcy matter. Defendant did not tell Plaintiff that he had filed for bankruptcy or been discharged. From Plaintiff's perspective, the parties continued their relationship as lessor and lessee with Defendant operating the video store as Showtime Video. From Defendant's perspective, S & S Investments operated Showtime Video during this time. In any event, Defendant signed checks for the rent on the premises until he began getting behind in the rent in 1994. Although his last rent payment was in February of 1995, he did not vacate the premises until the end of August 1995. Plaintiff obtained a new tenant effective October 1, 1995.

{5} Plaintiff filed this lawsuit in November of 1995, seeking rental payments from the time Defendant stopped paying rent until Plaintiff found a new tenant, as well as the remaining balance under the note and lease addendum and various miscellaneous charges, such as insurance and taxes. Defendant moved to dismiss for lack of jurisdiction on the ground that he had been discharged of these obligations in the bankruptcy proceedings. Defendant also sought the protection of the bankruptcy court by filing an adversary complaint against Plaintiff in the bankruptcy matter. That case was concluded by a judgment, entered in September 1996 by the bankruptcy judge, which stated:

1. That any pre-petition liability, debt or obligation of [Defendant] was discharged in the [Defendant's] Chapter 7 case.

2. That [Defendant has] not executed any document reaffirming any discharged pre-petition indebtedness.

3. That [Plaintiff's] claims are post-petition claims regarding a promissory note and lease.

4. That the issues involving the alleged post-petition indebtedness should be tried in [the case in the Twelfth Judicial District Court].

{6} Following the trial in this case, the trial court, in its written decision, ruled that the assignment was ineffective to relieve Defendant of any of his alleged obligations under the lease and note. The trial court also ruled that bankruptcy was an essentially equitable matter. Thus, it ruled that Defendant's conduct in not scheduling the lease and note and conducting business as usual with Plaintiff during the two years after discharge waived Defendant's ability to rely on the bankruptcy discharge. It also ruled that the same conduct estopped Defendant from asserting that Plaintiff cannot recover for a post-bankruptcy breach of the lease. During oral arguments at the conclusion of the case and during Defendant's motion for rehearing, the trial court also expressed the opinion that Defendant (or his assignee) could not remain in possession of the leased premises at the same time he was contending that he had no obligation to pay rent. We consider it noteworthy that, insofar as the assignment is concerned, Defendant himself requested the trial court to conclude that "[i]rrespective of the assignment to S & S Investments, Inc., [Defendant] remained individually liable for the performance of his obligations under the lease agreement up to the time of filing his Bankruptcy Petition." Insofar as the effect of the bankruptcy proceedings are concerned, the trial court found, in findings that are not properly challenged, that the "judgment entered by [the bankruptcy court] returns the issues in this action to this Court" and the "judgment entered by [the bankruptcy court] states that the issue on these charges [sic] are post-petition obligations."

## DISCUSSION

### Standard of Review

{7} When the appellate court is asked to review the trial court's findings of historical facts, the appellate court uses the substantial evidence standard of review, but when it is asked to review the trial court's application of the law to undisputed or unchallenged historical facts, the appellate court uses a de novo standard of review. *See In re Forfeiture of ($28,000.00)*, 1998–NMCA–029, ¶ 10, 124 N.M. 661, 954 P.2d 93; *Quantum Corp. v. State, Taxation & Revenue Dep't*, 1998–NMCA–050, ¶ 8, 125 N.M. 49, 956 P.2d 848. Our decision in this case solely reviews the trial court's application of the law to historical facts that are either undisputed or not properly challenged. Therefore, our standard of review is de novo.

{8} In Defendant's summary of proceedings, he points out that the trial court adopted conflicting findings of fact by adopting verbatim many of both parties' requested finding of fact, and he states that the adoption of Plaintiff's requested findings in this regard is not supported by the evidence. The alleged conflict is that Plaintiff's requests suggested that Defendant operated Showtime Video individually after the date of the assignment of the lease whereas Defendant's requests suggested that S & S Investments operated Showtime Video. We need not resolve the dispute for purposes of this opinion. The undisputed evidence showed that Defendant signed the promissory note and lease addendum individually, as well as operated the store in much the same manner before the lease assignment as after. We review the law applicable to these facts.

### Assignment

{9} Defendant's first contention on appeal is that the trial court erred in holding that Defendant continued to be obligated on the lease after his assignment of it to S & S Investments. The thrust of Defendant's argument under this issue is that nothing prevented Defendant from assigning the lease.

{10} While we agree that nothing prevented the assignment, the issue in this case is not whether the assignment was valid, thus permitting S & S Investments to take over Defendant's rights and obligations, but rather whether the assignment relieved Defendant of his obligations in the event of nonperformance by S & S Investments. The general rule is that, without an express release of the lessee by the lessor, the fact that

a lease is assigned does not relieve the lessee of its express covenant to pay rent. *See* Restatement (Second) of Property: Landlord & Tenant § 16.1 (1977); 49 Am.Jur.2d *Landlord & Tenant* § 1120 (1995). *Cf. McCallister v. Lusk,* 102 N.M. 209, 213–14, 693 P.2d 575, 579–80 (1984) (holding that seller was entitled to foreclose against buyers and parties in possession where seller was never asked and never agreed to substitute parties in possession for buyers).

{11} The authorities on which Defendant relies are not to the contrary. The Restatement (Second) of Contracts § 318(1) (1981) simply allows an obligor to delegate performance so that the obligee cannot complain when the performance is forthcoming from someone other than the original obligor. This is the same situation that was addressed in *Stamm v. Buchanan,* 55 N.M. 127, 227 P.2d 633 (1951). In that case, the Supreme Court held that the lessor was not entitled to terminate the lease because of the original lessee's bankruptcy, when the assignee continued to perform the lease obligations pursuant to its terms. *See id.* at 135, 227 P.2d at 638. Here, the lessor, Plaintiff, did not seek to terminate the lease that was still being performed by an assignee. Plaintiff merely sought to hold Defendant liable for his original obligation notwithstanding the assignment because Plaintiff ceased to receive rent. In addition, the undisputed facts of this case show that Defendant continued to act as the lessee in his individual capacity by signing the note and lease addendum following the assignment.

{12} The trial court was correct in holding Defendant liable notwithstanding the assignment. The trial court's decision was well supported by the general rule, as well as by Defendant's acquiescence in the general rule in his requested finding we have quoted in paragraph six above. Indeed, we are at somewhat of a loss to understand Defendant's argument on appeal. Not only did he acquiesce in the general rule in his written finding, but numerous times during argument on the issues below he conceded that he remained liable, notwithstanding the assignment, until the bankruptcy proceedings. We agree with this concession that, if anything

terminated his obligations under the lease, it was the effect of the bankruptcy proceedings, and not the assignment of the lease. Accordingly, we now examine the effect, if any, of the bankruptcy proceedings.

**Bankruptcy**

{13} Defendant raises several issues arising out of the bankruptcy proceedings and the trial court's various rulings about their effect on the issues in this case. First, Defendant claims that the trial court erred in holding that the claims at issue in this case are not pre-petition claims, defined as debts under the specific wording of the bankruptcy laws, and therefore dischargeable and discharged in the bankruptcy proceedings. Second, Defendant claims that the trial court erred in holding that Defendant's failure to list Plaintiff as a creditor operated to make Defendant's debts to Plaintiff nondischargeable. While this is the general rule, Defendant claims that an exception applies in no-asset cases such as the trial court found his bankruptcy to be. Third, Defendant claims that the trial court erred in holding that Defendant's actions in continuing to perform under the lease for two years after his discharge in bankruptcy operated as a waiver or estoppel. Defendant alleges that the only way he can waive the discharge of this particular obligation is by the statutory process of "reaffirmation," which the trial court found was not done. Fourth, Defendant claims that in finding his actions constituted a waiver or estoppel the trial court impermissibly pierced the corporate veil. Defendant argues that there are limited circumstances available to pierce the corporate veil and hold him individually liable for his assignee's failure to fulfill the lease obligation, and that the trial court did not find these circumstances to be present. Finally, Defendant claims that the trial court erred in failing to recognize and apply the discharge injunction. Defendant contends that his bankruptcy discharge should have enjoined Plaintiff from proceeding to collect the debt against him individually.

{14} Although we can agree with Defendant's view of the bankruptcy law on each of his specific issues, it does not follow that such

agreement requires a reversal of the trial court's judgment. Our agreement with Defendant, and consequent disagreement with Plaintiff's defense of the trial court's decision on these issues, does not affect the ultimate result. We understand that result to be based on the bankruptcy court's ruling that the issues in this case involve post-petition claims, together with the fact that there is legal justification for viewing them as post-petition claims based on Defendant's remaining in possession of the premises for all but one month of the time covered by Plaintiff's claims. *See State ex rel. Martinez v. Lewis*, 116 N.M. 194, 206, 861 P.2d 235, 247 (Ct.App. 1993) (erroneous rulings not necessary to support the judgment are not grounds for reversal). We explain each matter in turn.

### 1. *Definition of Debt*

{15} Defendant contends that the trial court erred in holding that his obligations under the lease and note were not pre-petition claims that were discharged in the bankruptcy proceedings. In his argument on this issue, Defendant relies solely on the bankruptcy law's definitions and the ordinary incidents of leases and notes. If the only facts of this case were that Defendant entered into a lease and note in 1989 and 1990, that he was discharged in bankruptcy in 1992, and that Plaintiff was suing Defendant based solely on obligations that Defendant incurred in 1989 and 1990, we would agree with Defendant.

{16} The Bankruptcy Act defines "debt" as "liability on a claim," 11 U.S.C. § 101(12) (1994), and provides that discharge operates to prevent any attempt to hold a debtor liable for discharged debts, *see* 11 U.S.C. § 727 (1994). Moreover, the definition of claim is exceedingly and intentionally broad. "Claim" is defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). In its commentary on the definition, Congress stated that, "the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." S.Rep. No. 95–989, at 22 (1978), *reprinted in* 11 U.S.C. § 101, at 653 (Historical and Revision Notes).

{17} However, as should be evident from our recitation of the facts and as will be further explained in the fourth section of this discussion, this case does not solely involve a suit on a pre-petition lease and note. Rather, it involves particular post-petition facts and a specific bankruptcy court order stating that these are post-petition claims. Thus, although we may agree with Defendant as a general proposition, those general propositions do not apply to the specific facts of this case.

### 2. *Failure to Disclose*

{18} The trial court ruled that Defendant's failure to disclose his obligations to Plaintiff to the bankruptcy court prejudiced Plaintiff in that Plaintiff was thereby deprived of an opportunity for relief afforded creditors as well as the opportunity to terminate the lease and mitigate damages. Therefore, the trial court ruled that, as a matter of equity, Defendant should not be able to rely on the bankruptcy discharge to avoid his obligations to Plaintiff. To the extent that the trial court relied on ordinary principles of equity in this case that is instead governed by the strict requirements of the bankruptcy laws, we again agree with Defendant that it erred.

{19} The general rule is that debts that are not disclosed in the bankruptcy proceedings are not discharged. *See* 11 U.S.C. § 523(a)(3)(A) (1995). The reason for the general rule is grounded on the policy considerations articulated by the trial court. To the extent that a debtor deprives a creditor of relief, the debtor should not be protected by the bankruptcy laws. However, the rule is otherwise in a no-asset case, such as this one. In a no-asset case, creditors are not prejudiced by any failure to disclose because there is nothing in the estate for them to split up in any event. *See Judd v. Wolfe*, 78 F.3d 110, 114–15 (3rd Cir.1996). Thus, even nondisclosed debts are discharged as a matter of law in no-asset cases. *See Beezley v.*

*California Land Title Co.*, 994 F.2d 1433, 1434 (9th Cir.1993). Moreover, the bankruptcy court expressly ruled in this case that "any" pre-petition obligation was discharged.

{20} To the extent that it appeared to rule otherwise, the trial court erred. However, as under the first issue, this error does not mandate a reversal.

### 3. *General Equitable Principles Versus Reaffirmation*

{21} While ruling that Defendant did not reaffirm his obligations to Plaintiff in this case, the trial court nonetheless accomplished the same result by ruling that general equitable principles accomplished a waiver by Defendant of his discharge and an estoppel to rely on it. Defendant contends that the trial court erred in so ruling, and again we agree, but that agreement also does not affect the result.

{22} The trial court relied principally on *In re Ranch House of Orange–Brevard, Inc.*, 773 F.2d 1166, 1169 (11th Cir.1985), for the proposition that general principles of equity apply in bankruptcy proceedings and that the doctrines of waiver and estoppel specifically may be available in situations of unexpired leases. Plaintiff relies on that case, as well as *In re Austin*, 102 B.R. 897, 901 (Bankr. S.D.Ga.1989), and *In re THW Enterprises, Inc.*, 89 B.R. 351, 353–54 (Bankr.S.D.N.Y. 1988), for the proposition that waiver and estoppel apply in lease situations. In our view, the trial court read these cases too expansively and did not pay sufficient heed to the applicable bankruptcy law.

{23} The bankruptcy law is clear—a waiver of discharge of specific debts is governed by the reaffirmation rules, and those rules must be complied with in order for a waiver to be valid. *See In re Minor*, 115 B.R. 690, 693 (D.Colo.1990). Public policy does not allow debts to be considered not discharged except in accordance with the express terms of the bankruptcy laws. *See id.* To the extent that the trial court's ruling would allow actions by Plaintiff that do not amount to reaffirmation to have the same effect as reaffirmation, we believe that the trial court erred.

{24} Nor is Plaintiff's reliance on *Ranch House, Austin,* or *THW* persuasive. Importantly, none of those cases involved waivers by the debtors. All of them involved lessors and their respective waivers of a provision in the Bankruptcy Act automatically rejecting leases of the debtors. In each case, it would be the debtor who would be benefitted by the lessors' waiver. Inasmuch as the purpose of the Bankruptcy Act is to benefit the debtor, there is nothing inconsistent with that Act to allow lessors to waive the benefit of certain provisions when that waiver benefits the debtors. The same cannot be said for Plaintiff's argument here. In fact, were we to agree with Plaintiff's general equity argument, we would do violence to several specific provisions of the Bankruptcy Act.

{25} However, as with the two previous issues, the trial court's apparent error in this regard does not affect the judgment. Further, although we agree that the trial court erred in finding a waiver, Defendant is still liable for payments due on the lease and promissory note, and therefore the trial court did not impermissibly pierce the corporate veil.

### 4. *Post–Petition Claims*

{26} As we quoted earlier in paragraphs five and six, the bankruptcy court specifically found that the claims in this case were post-petition claims that should be tried in state court, and the trial court specifically found that the bankruptcy court returned the claims to state court because they were post-petition claims. Nowhere in either of Defendant's briefs does he properly challenge the trial court's findings that Plaintiff's claims were, in fact, post-petition claims. A reviewing court is bound by findings not attacked by an appellant. *See Nosker v. Trinity Land Co.*, 107 N.M. 333, 337, 757 P.2d 803, 807 (Ct.App.1988).

{27} It is true that in his reply brief, Defendant states, without argument, that the bankruptcy court "allowed the state court proceeding to continue on the basis the state court could determine whether the debt ... was or was not a pre-petition or post-petition debt." However, a statement with-

out argument is not sufficient to challenge a finding. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that an appellant must submit both argument and authority in support of issues). In addition, the reply brief is not the place to raise new issues. *See Hale v. Basin Motor Co.*, 110 N.M. 314, 321, 795 P.2d 1006, 1013 (1990). Most importantly, the trial court's findings are supported by the express ruling of the bankruptcy court, which did not allow the trial court to determine whether the debt was pre-petition or post-petition, but instead ruled that "[Plaintiff's] claims *are* post-petition claims ... [that] should be tried in [state court]." (Emphasis added.) Because we are bound by the fact that the claims at issue in this case are post-petition claims, none of Defendant's bankruptcy arguments, which are predicated on the notion that Plaintiff's claims are pre-petition claims, apply.

**■** {28} In addition, there is some law to support the trial court's rationale that, at least as to payments due Plaintiff under the lease, these were post-petition obligations for at least as long as Defendant's assignee remained in possession and Defendant operated the video store out of the leased premises. We consider these payments due to be analogous to the cooperative association dues at issue in *In re Rosenfeld*, 23 F.3d 833 (4th Cir.1994). In that case, the debtor, who owned a cooperative apartment, was discharged in bankruptcy. *See id.* at 835. Following the discharge, the cooperative association still assessed him with its dues, and it sued to recover them. *See id.* The court ruled that the debtor's obligation to pay the post-discharge assessments arose from his post-petition occupancy of the property, and not from a pre-petition contractual obligation. *See id.* at 837. *Cf. In re Ament*, 77 B.R. 439, 440 (Bankr.D.Del.1987) (holding that 11 U.S.C. § 541 (1994) of Bankruptcy Code requires debtor to compensate "bankruptcy estate when that estate is being diminished, such as by the debtor's continued use of the property"). The *Rosenfeld* court also ruled that, in order to terminate his responsibility for the assessments, the debtor had to transfer title to the property. *See Rosenfeld*, 23 F.3d at 838. In a similar fashion in this case, the trial court reasoned that it was important that the premises were not vacated, but rather that Defendant or his assignee were still operating a video store out of the premises and obtaining benefits on a monthly basis from being in possession. We agree. Defendant cannot continue to receive the benefit of the lease without liability.

{29} We realize that this rationale would not necessarily apply to the extent that the trial court relied on the promissory note, as opposed to the lease. But (1) Defendant does not draw any distinction on appeal between the promissory note and the lease, (2) the bankruptcy court's order applied equally to the promissory note as to the lease, and (3) the second addendum to the lease merged the note into it. Thus, we do not discuss whether the judgment ought to be partially reversed to the extent it was based on the promissory note apart from the lease. Accordingly, we conclude that the trial court did not err in failing to recognize and apply the discharge injunction.

## CONCLUSION

{30} The judgment is affirmed.

{31} **IT IS SO ORDERED.**

DONNELLY and WECHSLER, JJ., concur.