This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38926**

**MATTHEW SWART and BRITTNEY GEITGEY,**

Plaintiffs-Appellants,

v.

**ARMAND SAIIA,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail Aragon, District Court Judge**

Robert Richards
Santa Fe, NM

for Appellants

Kathryn J. Hardy Law, LLC
Kathryn J. Hardy
Taos, NM

for Appellee

### MEMORANDUM OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}** Plaintiffs Matthew Swart and Brittney Geitgey (collectively, Plaintiffs) entered into a rent-to-own agreement with an option to purchase property from Defendant Armond Saiia. Plaintiffs attempted to execute the option to purchase, but the parties could not agree on the terms of the required real estate contract. Plaintiffs sued asserting several causes of action related to their attempt to exercise the option. Plaintiffs also requested relief in the form of rent abatement. The district court found in favor of Defendant on all issues. Plaintiffs appeal, making arguments about the option contract, fraud, bad faith,

promissory estoppel, and rent abatement.[1] We reverse the district court's decision regarding abatement for a lack of water pressure and hot water and otherwise affirm.

**BACKGROUND**[2]

**{2}** On April 1, 2018, Plaintiffs and Defendant signed an agreement titled "Rent to Own Agreement" (the Agreement), which concerned real property in Ribera, New Mexico owned by Defendant (the Property). The Agreement contained an "option to purchase" (the Option) that stated:

> OPTION TO PURCHASE. [Plaintiffs], upon providing timely payments for the term of this Lease, shall have the Option to Purchase [the Property] for a purchase price of $275,000.00, the financing for which shall be carried by [Defendant] over a term of [fifteen] years. In the event that [Plaintiffs] make[] timely lease payments and decide[] to pursue Option to Purchase, all parties shall promptly proceed to execute in full a Real Estate Contract through Escrow detailing that [Plaintiffs] agree[] to satisfy [Defendant]'s existing mortgage within six (6) years, followed by the remainder of purchase price at an interest rate of 2.5 [percent] to be satisfied within nine (9) years. [Defendant] shall credit towards the purchase price the sum of $900 from each monthly lease payment that [Plaintiffs] timely made, in addition to the $450 Security Deposit submitted to [Defendant] through this Lease.

**{3}** On March 1, 2019, Plaintiffs sent Defendant a letter titled "Notice of Intent to Exercise Option to Purchase" wherein they expressly stated "[i]n accordance with the terms outlined in [the Agreement], we are hereby exercising our option to purchase." In response, an attorney on behalf of Defendant sent Plaintiffs a term sheet with the details of the transaction that would be memorialized in a real estate contract and an amortization schedule.

---

1At the outset, we remind Plaintiffs that litigants are encouraged to limit the number of issues they choose to raise on appeal in order to ensure that those presented are adequately argued and are supported both by authority and properly cited facts in the record. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.").

2Neither of the parties properly cite to the record proper in their briefing to this Court. *See* Rule 12-318(A)(3) NMRA (requiring briefs to appellate courts to include a summary of proceedings that "shall contain citations of the record proper . . . or exhibits supporting each factual representation"); Rule 12-318(A)(4) (requiring briefs to appellate courts to include an argument that "shall contain . . . citations to authorities, record proper, . . . or exhibits relied on"). The log notes for the evidentiary hearings specifically state "[l]og notes are not the Official Record, nor are they meant to be verbatim. The FTR Recording is the Official Record." We admonish counsel to adhere to our rules more closely in the future to avoid prejudice to their clients and potential sanctions from this Court. *See generally* Rule 12-318; *see also* Rule 12-312(D) NMRA (providing that this Court may impose sanctions as it deems appropriate for the failure to comply with the Rules of Appellate Procedure).

**{4}** Plaintiffs responded with changes to the term sheet because "the [t]erms [did] not reflect those that we agreed upon in [the Agreement]." On April 19, 2019, Defendant's counsel responded noting that Plaintiffs failed to pay rent for April and that Defendant "[did] not consent to their holding over and refusal to pay rent." Counsel further noted that the Option was contingent on Plaintiffs providing timely payments for the term of the Agreement, but they had not paid other amounts, including rents and utilities, when due. Based on this failure, counsel stated, "[Defendant] terminates the option to purchase due to your default."

**{5}** Plaintiffs filed a "First Amended Petition for Writ of Restitution or Forcible Entry or Unlawful Detainer, Breach of the Lease Agreement, Fraud, Extortion, Retaliation, Illegal Reduction of Services and Abatement" against Defendant. The district court held an evidentiary hearing regarding Plaintiffs' claims. The district court made findings of fact and conclusions of law and dismissed Plaintiffs' claims with prejudice. Plaintiffs appeal.

**DISCUSSION**

**I.      The Option**

**{6}** The district court entered several conclusions of law relevant to its decision regarding the Option. They include:

> 1.      A contract is a legally enforceable promise. In order for a promise to be legally enforceable, there must be an offer, an acceptance, consideration, and mutual assent. UJI[]13-801 [NMRA].
>
> 2.      Although there may have been an offer in the form of Plaintiffs exercising the Option . . ., Defendant did not accept.
>
> . . . .
>
> 6.      The specific terms of the real estate contract were never agreed upon, therefore there is no mutual assent.
>
> 7.      Plaintiffs did not prove by a preponderance of the evidence the existence of all elements of an enforceable real estate contact.

We understand the district court to have determined that Plaintiffs exercising the Option was an offer, Defendant did not agree to the terms in that offer, and no contract was formed.

**{7}** Plaintiffs argue that exercising the Option was an acceptance of an offer from Defendant under the terms set forth in the Agreement, not a new offer. We agree with Plaintiffs on this point.

**{8}**     "[A]n option to purchase is a contract where the property owner, in exchange for valuable consideration, agrees with another person that the latter shall have the privilege of buying property within a specific time on terms and conditions expressed in the option." *White v. Farris*, 2021-NMCA-014, ¶ 17, 485 P.3d 791 (internal quotation marks and citation omitted). "Defined at its most basic level, an option is simply a contract to keep an offer open." *Garcia v. Sonoma Ranch E. II, LLC*, 2013-NMCA-042, ¶ 14, 298 P.3d 510 (internal quotation marks and citation omitted). "[A]n option contract serves to make an offer irrevocable for the stated period of time." *Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 15, 121 N.M. 622, 916 P.2d 822; *see Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 14, 123 N.M. 526, 943 P.2d 560 ("An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." (internal quotation marks and citation omitted)).

**{9}**     The district court apparently misunderstood the law on option contracts. The Option was an offer by Defendant for sale of the Property based on the terms in the Option. *See Strata*, 1996-NMSC-016, ¶ 15. The consideration for the Option was timely lease payments between April 2018 and March 2019, and that consideration was what sustained the contract to keep the offer open. *See White*, 2021-NMCA-014, ¶ 17. Plaintiffs' attempt to exercise the Option was an endeavor to accept Defendant's offer to sell the Property that was set out in the Agreement. The question then becomes whether we can affirm the judgment despite the district court's error. The simple answer is "yes." We explain.

**{10}**     An appellate court may affirm a district court's ruling on a ground that was not relied on below if reliance on the new ground would not be unfair to the appellant. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. "Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." *Jones v. City of Albuquerque Police Dep't*, 2020-NMSC-013, ¶ 27, 470 P.3d 252 (internal quotation marks and citation omitted). Based on this, we turn to reviewing the parties' arguments regarding ambiguity. We review whether a contractual provision is ambiguous, a question of law, de novo. *Randles v. Hanson*, 2011-NMCA-059, ¶ 26, 150 N.M. 362, 258 P.3d 1154.

**{11}**     "Enforceability of a contract requires more than just the parties' intent to be bound." *Padilla v. RRA, Inc.*, 1997-NMCA-104, ¶ 8, 124 N.M. 111, 946 P.2d 1122. "A court cannot enforce a contract unless it can determine what it is." *Las Cruces Urb. Renewal Agency v. El Paso Elec. Co.*, 1974-NMSC-004, ¶ 14, 86 N.M. 305, 523 P.2d 549 (internal quotation marks and citation omitted). "Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain." *Padilla*, 1997-NMCA-104, ¶ 8. "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id.* (internal quotation marks and citation omitted). "The fact that one or more terms of a

proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance." *Las Cruces Urb. Renewal Agency*, 1974-NMSC-004, ¶ 14 (internal quotation marks and citation omitted).

**{12}** We start by noting that Plaintiffs argued to the district court in their proposed findings of fact and conclusions of law that the Option "met all the terms necessary for the formation of a contract, had all the material terms necessary to execute the contract, and there were no material ambiguous terms or conditions in the contract." Plaintiffs also asserted to the district court that "[a]ll the material terms necessary to draft a real estate contract were clearly set forth in the [Option]." Plaintiffs did not cite the record proper for either assertion.

**{13}** We disagree with Plaintiffs' assertion that the terms are "so plain that no reasonable person could hold any way but one." Instead, we conclude that the Option is too vague, indefinite, and ambiguous to be enforceable. *See id.* Our review of Defendant's expert's testimony—the only expert qualified in this case—supports our conclusion that the Option was not capable of enforcement because there were "too many uncertainties and ambiguities." The Option's terms require that a real estate contract be executed through escrow and the real estate contract was to include the terms of the Option. The Option first states "[Plaintiffs] agree[] to satisfy [Defendant]'s existing mortgage within six (6) years." First, as Defendant's expert witness testified, it is unclear *how* Plaintiffs would satisfy the existing mortgage in six years—whether they were to make a balloon payment or payments over the course of the mortgage, and if it was the latter, how much the payments would be. The parties agreed on the purchase price, $275,000. However, it is unclear whether Plaintiffs would make payments directly to the lender of the existing mortgage or to Defendant. The Option also does not delineate if the "existing mortgage" includes the principal, interest payments, insurance, property taxes, or a combination thereof. And, it is unclear how payments toward the existing mortgage would be credited to the principal of the $275,000 purchase price. That is, it is unclear whether all payments made to satisfy the "existing mortgage" would be applied to the principal of the Option's purchase price, or be otherwise allocated. In short, it is unclear how the amortization schedule for the purchase price would—or even could—be calculated.

**{14}** Next, the Option notes that after the existing mortgage was paid, "the remainder of purchase price at an interest rate of 2.5 [percent]" was "to be satisfied within nine (9) years." It is unclear if the interest applies to the entire purchase price or to the purchase price less the existing mortgage, which is again affected by when and how Plaintiffs would pay off the existing mortgage. The terms in the Option simply cannot be reduced to a real estate contract with a precise amortization schedule. *See Las Cruces Urb. Renewal Agency*, 1974-NMSC-004, ¶ 14. We conclude that the Option is too ambiguous to be enforceable.

**{15}** Plaintiffs next argue that Defendant's failure to honor the Option was fraud and evidenced bad faith. Our determination that the Option was ambiguous and no contract could be formed establishes that there can be no valid claim for fraud. If the terms were

too ambiguous to create a contract, they cannot be the basis for a misrepresentation to Plaintiffs. *See Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 112 P.3d 281 (requiring a misrepresentation of fact for a cause of action of fraud). The same logic applies for Plaintiffs' claim of bad faith, which requires a contract to sustain a cause of action. *See* UJI 13-832 NMRA ("To prove that [the defendant] breached the promise of good faith and fair dealing, [the plaintiff] must prove that [the defendant] acted in bad faith in [performing] . . . *the contract* or wrongfully and intentionally *used the contract* to harm [the plaintiff]." (emphases added)).

**{16}** Plaintiffs also argue that "[t]ermination of the Option is barred by principles of promissory estoppel." "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted). "In order to preserve an issue for appeal, [an appellant] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791.

**{17}** Plaintiffs claim they preserved this issue in their reply in support of their motion for partial summary judgment, where they stated, "[Defendant's] claim is barred by principles of promissory estoppel, and Defendant never disputes this. Plaintiffs carried out their duties and obligations under the Agreement. Defendant cannot now change the terms based on his own greed and avarice." We note that Plaintiffs did not make an argument based on promissory estoppel to the district court in their proposed findings of fact and conclusions of law. Plaintiffs' passing reference to promissory estoppel in their summary judgment briefing was insufficient to specifically apprise the district court of an argument regarding promissory estoppel and did not permit the district court to make an intelligent ruling on the issue. *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 50, 146 N.M. 698, 213 P.3d 1127 ("The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue."), *rev'd on other grounds by* 2010-NMSC-040, 148 N.M. 561, 240 P.3d 648. Thus, the argument is unpreserved and we decline to address it.

**{18}** Plaintiffs' final argument regarding the Option is that several of the district court's findings of fact and conclusions of law are "unsupported by the Agreement, Option, or any statute, case law, or rule." Upon review of these allegations, the findings that Plaintiffs object to are unnecessary to support the district court's or this Court's decision. *See Normand ex rel. Normand v. Ray*, 1990-NMSC-006, ¶ 35, 109 N.M. 403, 785 P.2d 743 ("Even where specific findings adopted by the [district] court are shown to be erroneous, if they are unnecessary to support the judgment of the court and other valid material findings uphold the [district] court's decision, the [district] court's decision will not be overturned.").

## II. Abatement

**{19}** Plaintiffs also argue that they were entitled to an abatement of their rent payments based on (1) a lack of water pressure and hot water, (2) Defendant failing to pay for utilities for two months, (3) a broken refrigerator, and (4) mold in the bathroom.

**{20}** In relevant part, the Uniform Owner-Resident Relations Act, NMSA 1978, §§ 47-8-1 to -52 (1975, as amended through 2007) sets out rights and obligations of property owners and residents. Section 47-8-2. Per the statute, an owner shall "make repairs and do whatever is necessary to put and keep the premises in a safe condition as provided by applicable law and rules." Section 47-8-20(A)(2). It shall also "maintain in good and safe working order and condition . . . plumbing, . . . and other facilities and appliances . . . supplied or required to be supplied by [the owner]." Section 47-8-20(A)(4). If there is a violation of either of these provisions, "the resident shall give written notice to the owner of the conditions needing repair. If the owner does not remedy the conditions set out in the notice within seven days of the notice, the resident is entitled to abate rent." Section 47-8-27.2(A).

**{21}** The district court concluded "Plaintiffs did not prove by a preponderance of the evidence that Defendant abated the property." We acknowledge that this conclusion indicates a misunderstanding of the law. Plaintiffs argued they were entitled to abatement of their rent per Sections 47-8-20(A)(2), (4) and -27.2. In a situation such as this, a landlord-defendant does not abate rent; rather, the tenant-plaintiff would be entitled to pay only a portion of their rent and, as a result, the district court would award rent abatement to tenant-plaintiff. *See* § 47-8-27.2(A)(1) (noting the remedy as the resident being able to abate the rent for "one-third of the pro-rata daily rent for each day from the date the resident notified the owner of the conditions needing repair, through the day the conditions in the notice are remedied"). Nevertheless, we understand that the district court determined that the Plaintiffs did not meet their burden to demonstrate they were entitled to rent abatement for the four complained about issues—a lack of water pressure and hot water, utilities, a broken refrigerator, and mold.

**{22}** In addressing this argument, we review the district court's final judgment and apply a substantial evidence standard to its findings of fact and a de novo standard to its conclusions of law. *See Jacob v. Spurlin*, 1999-NMCA-049, ¶ 7, 127 N.M. 127, 978 P.2d 334. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658 (internal quotation marks and citation omitted). This Court operates pursuant to a presumption of correctness in favor of the district court's rulings, and it is the appellant's burden to demonstrate error on appeal. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that the burden is on the appellant to clearly demonstrate that the district court erred). We address each issue in turn.

**{23}** We start with Plaintiffs argument that there were plumbing issues related to water flow and little hot water. On January 23, 2019, Plaintiffs emailed Defendant explaining

that the water pressure in the shower was "running at a trickle." They explained that they had "to turn every faucet in the house just to get the water heater to kick in and even [that was] becoming less and less possible." They explained they were not able to shower and were wasting water to get warm water to wash dishes in the kitchen. Defendant testified that the water heater had calcification build up and he bought a cleaning solution to remedy the calcification. However, the evidence demonstrates that the solution was purchased on February 15, 2019—twenty-three days after Plaintiffs requested help with the water. Though the evidence demonstrates Defendant remedied the condition, it also establishes that he addressed the issue more than seven days after the written notice. As such, Plaintiffs were entitled to "one-third of the pro-rata daily rent for each day from the date the resident notified the owner of the conditions needing repair, through the day the conditions in the notice [were] remedied." *See* § 47-8-27.2(A)(1); *see also* § 47-8-27.2(A) (noting a resident is entitled to rent abatement if the resident gives the owner written notice and the owner does not remedy the conditions set out in the notice within seven days of the notice). Thus, Plaintiffs are entitled to one third of their pro-rata daily rent for each day from January 23, 2019 through February 15, 2019.

**{24}**    With regard to the utilities, Plaintiffs argue they are entitled to abatement because Defendant "pocketed [Plaintiff's] money for utilities and subsequently stopped paying the utilities." While the evidence demonstrates that Plaintiffs paid Defendant for utilities and Defendant did not pay the water utility for payments in March and April 2019, the water was not shut off due to failure to pay the bill. Though Plaintiffs began making payments for the water directly to the authority in May 2019, they did not pay a second time for utilities in March or April 2019. Evidence supports the district court's decision because Plaintiffs were not deprived of water utilities during the term of the Agreement. Therefore, Plaintiffs were not entitled to rent abatement for utility payments. *See* § 47-8-20(A)(4).

**{25}**    Plaintiffs next argue that a refrigerator in the kitchen stopped working and that Defendant "did not fix or replace the refrigerator." Defendant agreed that the kitchen refrigerator did not work, and testified he took the broken refrigerator from the house, and Plaintiffs had access to a second functional refrigerator. Substantial evidence demonstrates Plaintiffs were not deprived of access to a refrigerator and supports the district court's decision.

**{26}**    Finally, Plaintiffs argue that in April 2018 they informed Defendant the bathroom had mold in it, but Defendant never addressed the mold. The citations to the record provided by Plaintiffs only demonstrate that Plaintiff Geitgey informed Defendant over email that "[t]he bathroom presents a potentially serious health problem I think in terms of mold. We are both experiencing some lung problems that we didn't have prior to spending time in here." But the remainder of her email states, "We would like to begin [gutting] the bathroom ASAP, followed by a good bleaching—hopefully while keeping it basically functional. . . . Do you agree? Would that be okay with you?" Plaintiff Geitgey's testimony was limited to describing the email and saying Defendant did not do anything to remedy the problem.

**{27}** We start by noting that Plaintiffs' written notice was more of a request for permission to gut and clean the bathroom than a notice that Defendant needed to repair the mold issue. Further, Plaintiffs' bare evidence does not demonstrate anything about the habitability of the home based on the mold. *See Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 ("We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings."). The evidence does not demonstrate that the home was not "in a safe condition" or that Defendant did not maintain the facilities and appliances "in good and safe working order and condition." *See* § 47-8-20(A)(2),(4). In viewing the evidence with a presumption favoring the correctness of the district court's decision, *see Farmers, Inc.*, 1990-NMSC-100, ¶ 8, we disagree with Plaintiffs' assertion. Substantial evidence supports the district court's decision to not award Plaintiffs abatement based on mold.

**{28}** In sum, we reverse the district court's decision in regards to the lack of water pressure and hot water issue and affirm regarding the remaining abatement decisions. Plaintiffs are entitled to one third of their pro-rata daily rent from January 23, 2019 through February 15, 2019.

**CONCLUSION**

**{29}** Based on the foregoing, we reverse the district court's decision regarding abatement for the lack of water pressure and hot water issue, remand for further proceedings consistent with this opinion, and otherwise affirm.

**{30} IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, sitting by designation.**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**